[Civ. No. 49557. First Dist., Div. One. Aug. 27, 1980.]

DARLIN JUNE CROMER, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

James C. Hooley, Public Defender, Robert L. Foster and Dean A. Beaupre, Assistant Public Defenders, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Edward P. O'Brien, Assistant Attorney General, and Herbert F. Wilkinson, Deputy Attorney General, for Real Party in Interest.

Pillsbury, Madison & Sutro, Jerome C. Dougherty, Michael H. Salinsky, Joseph R. Tiffany II, Mayre Rasmussen, Crosby, Heafey, Roach & May, Edwin A. Heafey, Jr., and Judith R. Epstein as Amici Curiae on behalf of Real Party in Interest.

OPINION

ELKINGTON, J.—As was said in a recent opinion of the nation's high court, *Gannett Co. v. DePasquale* (1979) 443 U.S. 368, 410 [61 L.Ed. 2d 608, 641, 99 S.Ct. 2898] (dis. opn. of Blackmun, J.): "This Court confronts in this case another aspect of the recurring conflict that arises whenever a defendant in a criminal case asserts that his right to a fair trial clashes with the right of the public in general, and of the press in particular, to an open proceeding."

Darlin June Cromer, 33 years old, was charged with the kidnaping and murder of a 5-year-old boy. At the preliminary examination, from which the public and news media were excluded (see Pen. Code, § 868), her purported confession to the crimes was placed in evidence. She was thereafter committed by the magistrate for trial in the superior court on a charge of murder with special circumstances rendering mandatory, upon conviction, the penalty of death or life imprisonment without pos-

sibility of parole. (See Pen. Code, § 190.2) Upon her arraignment in the superior court she moved, through a public defender, that the preliminary examination's transcribed evidence of her purported confession be not disclosed to the public and news media, *pending her trial.* In support of her motion she argued with at least some color of merit, (1) that such evidence would be inadmissible at her trial for lack of her, and its, competency, and (2) that the probable broad pretrial publication of it to the public from which her trial jury would be drawn, would deny her Fifth (due process) and Sixth Amendment rights to a fair trial.

The superior court denied Ms. Cromer's motion, and she seeks relief in this court by "writ of prohibition or mandamus. . . ."

We are aided by briefs of amici curiae representing interests of the news media and the public generally.

We first consider the rules by which we are bound.

It is observed that we are *not* here concerned with the duty of harmonizing, or giving preferred effect to one or the other of, a criminally charged defendant's constitutional right to a fair trial, and the *First Amendment's* guaranty of a free press. (See *Gannett Co. v. DePasquale, supra,* 443 U.S. 368, 404 (majority opn.), 447 (dis. opn.) [61 L.Ed.2d 608, 637, 664]; *Nixon v. Warner Communications, Inc.* (1978) 435 U.S. 589, 609 [55 L.Ed.2d 570, 586, 98 S.Ct. 1306]; *Saxbe v. Washington Post Co.* (1974) 417 U.S. 843, 850 [41 L.Ed.2d 514, 519, 94 S.Ct. 2811]; *Pell v. Procunier* (1974) 417 U.S. 817, 834 [41 L.Ed.2d 495, 508, 94 S.Ct. 2800]; *Branzburg v. Hayes* (1972) 408 U.S. 665, 684-685 [33 L.Ed.2d 626, 641, 92 S.Ct. 2646].) ■ Instead, in the circumstances of the case before us, the opposing value is the sometimes debated right of all persons to attend judicial proceedings and have access to judicial records. (See *Gannett Co. v. DePasquale, supra,* majority and dis. opns., *passim.*) "[I]n this respect members of the press have no greater rights or privileges than do members of the general public." (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 785 [136 Cal. Rptr. 821], and see authority there collected; see also *Zemel v. Rusk* (1965) 381 U.S. 1, 17 [14 L.Ed.2d 179, 190, 85 S.Ct. 1271].)

■ It is a truism of our law that: "Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, *the trial*

*courts must take strong measures to ensure that the balance is never weighed against the accused."* (Italics added; *Sheppard* v. *Maxwell* (1966) 384 U.S. 333, 362 [16 L.Ed.2d 600, 620, 86 S.Ct. 1507]; *People* v. *Sirhan* (1972) 7 Cal.3d 710, 730 [102 Cal.Rptr. 385, 497 P.2d 1121] overruled on point unrelated to any issue of this opn., *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 593, fn. 7 [150 Cal.Rptr. 435, 586 P.2d 916] [cert. den., 410 U.S. 947 [35 L.Ed.2d 613, 93 S.Ct. 1382]; *Allegrezza* v. *Superior Court* (1975) 47 Cal.App.3d 948, 951 [121 Cal.Rptr. 245].) "[T]he atmosphere essential to the preservation of a fair trial—the most fundamental of all freedoms—must be maintained at all costs." (*Estes* v. *Texas* (1965) 381 U.S. 532, 540 [14 L.Ed.2d 543, 549, 85 S.Ct. 1628].) And, as with the First Amendment, the courts have sometimes placed the right to a fair trial "in a preferred position on the scale of constitutional values." (See *Rosato* v. *Superior Court* (1975) 51 Cal.App.3d 190, 205 [124 Cal.Rptr. 427].)

"Judicial experience has shown that pretrial publication of [evidence against an accused] has had a tendency, in some instances, to prejudice a defendant's right to a fair trial." (*Craemer* v. *Superior Court* (1968) 265 Cal.App.2d 216, 226 [71 Cal.Rptr. 193].) "[U]nder some circumstances, there is such a probability of prejudice to the accused that prejudice is presumed. . . [such as where the news media] expos[es] the community 'repeatedly and in depth to the spectacle of [the accused] personally confessing in detail to the [charged] crimes. . . .'" (*People* v. *Sirhan, supra*, 7 Cal.3d 710, 731; and see *Rideau* v. *Louisiana* (1963) 373 U.S. 723, 726 [10 L.Ed.2d 663, 665, 83 S.Ct. 1417].)

"Closure of pretrial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has even begun." (*Gannett Co.* v. *DePasquale, supra*, 443 U.S. 368, 379 [61 L.Ed.2d 608, 621].) Such closure will in a proper case reasonably apply equally to court records and court proceedings.

There is, to be sure, a countervailing public policy. It is perhaps best pointed up by the majority *and* dissenting opinions of *Gannett Co.* v. *DePasquale, supra*, 443 U.S. 368. The majority there observed (p. 383 [61 L.Ed.2d p. 623]) that: "There can be no blinking the fact that there is a strong societal interest in public trials. Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to

perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system." But the five-to-four majority were unable to discern that the "strong societal interest" in public judicial procedures had *constitutional confirmation.* (*Id.,* pp. 380-381 [61 L.Ed.2d pp. 621-622].) On the other hand the dissenting justices believed that "openness" of judicial proceedings was a right *implicit* in the Sixth Amendment's guaranty to an accused of a *public trial.* (*Id.,* pp. 406-408, *passim* [61 L.Ed.2d pp. 638-640].)

However, *all* of the justices agreed that there are circumstances where an accused's due process right to a fair trial will transcend the "strong societal interest" in open judicial proceedings. Such is demonstrated by the decision's minority, speaking through Justice Blackmun: "At the same time, I do not deny that the publication of information learned in an open proceeding may harm irreparably, under certain circumstances, the ability of a defendant to obtain a fair trial. This is especially true in the context of a pretrial hearing, where disclosure of information, determined to be inadmissible at trial, may severely affect a defendant's rights. Although the Sixth Amendment's public-trial provision establishes a strong presumption in favor of open proceedings, it does not require that all proceedings be held in open court when to do so would deprive a defendant of a fair trial. [¶] No court has held that the Sixth Amendment imposes an absolute requirement that courts be open at all times. On the contrary, courts on both the state and federal levels have recognized exceptions to the public-trial requirement. . . . There are a number of instances where the courts have . . . upheld the exclusion of the public for limited periods of time." (*Id.,* p. 439 [61 L.Ed.2d p. 659].)

Recently (July 2, 1980) the nation's high court reiterated the rule of the transcendent nature of the right of one criminally accused to a fair trial, in this manner: "[H]ere for the first time the Court is asked to decide whether a criminal trial itself may be closed to the public upon the unopposed request of a defendant, without any demonstration that closure is required *to protect the defendant's superior right to a fair trial,* or that some other overriding consideration requires closure." (Italics added; *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 564 [65 L.Ed.2d 973, 981-982, 100 S.Ct. 2814].)

■ The appropriate judicial criteria for insuring an accused a fair trial in the face of adverse pretrial publicity is whether there is a "reasonable likelihood" of substantial prejudice (*Brian W.* v. *Superior Court*

(1978) 20 Cal.3d 618, 624, fn. 7 [143 Cal.Rptr. 717, 574 P.2d 788]), or that "publication of [a pretrial] transcript would endanger [defendant's] right to a fair trial" (*Rosato* v. *Superior Court, supra*, 51 Cal.App.3d 190, 209), or that there is "identifiable prejudice to the accused" (*People* v. *Sirhan, supra*, 7 Cal.3d 710, 731).

In determining whether pretrial publicity poses a "reasonable likelihood" of threat to an accused's fair trial, reviewing courts "have the duty to make an independent evaluation of the circumstances." (*Sheppard* v. *Maxwell, supra*, 384 U.S. 333, 362 [16 L.Ed.2d 600, 620]; *People* v. *Sirhan, supra*, 7 Cal.3d 710, 730; *Craemer* v. *Superior Court, supra*, 265 Cal.App.2d 216, 225.)

We accordingly make our independent evaluation of the circumstances of the case before us.

■ We need not elaborate upon the evidence presented to the magistrate, the pretrial nondisclosure of which is partially sought by Ms. Cromer. The circumstances there shown, of the homicidal death of the five-year-old victim, were such as would certainly outrage the sensibilities of persons, including prospective jurors, who might learn of them before the trial; they would not be soon forgotten. And were the evidence to be ruled inadmissible at the trial, we opine that it would be a rare juror who, having heard of it, could nevertheless disregard it. We are advised of no contrary contention or belief.

We advert then to the evidence concerning the probable measure of prejudicial pretrial publicity, were the superior court's order to stand.

We observe that following the homicide, February 5, 1980, the San Francisco Bay Area newspapers and particularly those of Alameda County where the crimes occurred and the instant proceedings are now pending, for at least eight days ran day-to-day news coverage of the crimes, their perpetrator, the victim, and the circumstances. Photographs of Ms. Cromer and her mother, and of the victim, his shallow grave, and his grieving mother, neighbors and playmates, frequently attended the news stories. And throughout that period there was related television news coverage. Thereafter, occasional news media publicity about the case appeared, which was stepped up substantially upon Ms. Cromer's appearance in the superior court. On the day of her closure motion, 15 news reporters were present in the courtroom, and from such

newspaper clippings as the public defender had gathered, 570 column inches about the case were tendered in evidence.

Reason suggests to us that the best measure of the *probable* pretrial news media treatment of the heretofore undisclosed evidence will appear from the coverage already given the far less inflammatory publicly disclosed information.* The coverage would more likely in our opinion be enhanced than lessened. We conclude that there is a "substantial probability [of] irreparable damage" to Ms. Cromer's fair trial right (see *Gannett Co. v. DePasquale, supra,* 443 U.S. 368, 441 [61 L.Ed.2d 608, 660] (dis. opn.)), and a "reasonable likelihood" of "identifiable prejudice to the accused" (see *Brian W. v. Superior Court, supra,* 20 Cal.3d 618, 624, fn. 7; *People v. Sirhan, supra,* 7 Cal.3d 710, 731), were Ms. Cromer's purported confession now to be released to the public, including those who may be called upon to serve as jurors at her trial.

But our inquiry is not ended.

We are required by reason and authority to explore, and utilize where proper, other measures which will reasonably insure a fair trial without requirement of closure of judicial proceedings or evidence. (See *Brian W. v. Superior Court, supra,* 20 Cal.3d 618, 625.) Sometimes suggested measures are change of venue and trial continuance. But if such are to be given effect it will reasonably be expected that regardless of where and when Ms. Cromer's trial commences it will be preceded, and accompanied, by the inflammatory publicity disclosures here sought to be temporarily suppressed. Moreover: "Postponement and change of venue are not entirely satisfactory remedies...as they may indirectly affect the defendant's right to a speedy trial in the district in which the crime was committed" (*id.,* p. 625); and: "Obviously the courts should not [demand, or] participate in, or encourage, a procedure which obliges the accused to forfeit one constitutional right in order to retain the protection of another" (*Allegrezza v. Superior Court, supra,* 47 Cal.App.3d 948, 952). And a searching jury voir dire by counsel, or emphatic instructions by the court, would seem here more likely to emphasize and exacerbate the prejudicial matters which the jury would be directed to disregard. We discern no reasonably acceptable alternative.

---

*"I know of no way of judging of the future but by the past." (Patrick Henry, Speech in the Virginia Convention, March 1775.)

Finally, we observe that here, when the danger of prejudice will have been dissipated by Ms. Cromer's soon to be held trial, the now restricted evidence will become public information. The intrusion upon the public's right "to observe the judicial system" will be of short duration, a consideration of importance in a case such as this. (See *Gannett Co.* v. *DePasquale, supra,* 443 U.S. 368, 383, 446 [61 L.Ed.2d 608, 623, 663]; *Allegrezza* v. *Superior Court, supra,* 47 Cal.App.3d 948, 952; *Craemer* v. *Superior Court, supra,* 265 Cal.App.2d 216, 226.)

For these several reasons Ms. Cromer shall have the relief she seeks.

A peremptory writ of mandate will issue directing the superior court to set aside the order here under review, and thereafter to take such proceedings as are not inconsistent with the views we have expressed.

**RACANELLI, P. J.**— I reluctantly concur in the result mandating interim sealing of a portion of the preliminary hearing transcript in view of the reasonable likelihood that pretrial disclosure could seriously affect petitioner's right to a fair and impartial jury trial within the vicinage. My reluctance is founded upon a conviction that even the temporary sealing of an otherwise public court record (see Pen. Code, §§ 869-870; Code Civ. Proc., § 1904; cf. Pen. Code, § 938.1, subd. (b)) evokes sensitive policy considerations relative to the desirability and need for unfettered access by both the public and media representatives. (Cf. *Cox Broadcasting Corp.* v. *Cohn* (1975) 420 U.S. 469, 495-496 [43 L.Ed.2d 328, 349-350, 95 S.Ct. 1029]; see *Richmond Newspapers, Inc.* v. *Virginia* (1980) 448 U.S. 555 [65 L.Ed.2d 973, 100 S.Ct. 2814]; see also *Brian W.* v. *Superior Court* (1978) 20 Cal.3d 618, 625-626 [143 Cal.Rptr. 717, 574 P.2d 788].)

Since the justification underlying the requested relief is avoidance of probable pretrial publicity taint, I would explicitly condition the grant of relief to permit the trial court to reconsider the necessity for pretrial nondisclosure in light of any subsequent developments or proceedings likely to affect the actual date of commencement or place of trial.

**NEWSOM, J.,** Concurring.—I am in substantial agreement with all the views so ably expressed in Justice Elkington's opinion. However, I wish to stress that, in exercising my obligation to independently assess the potential prejudice flowing from publication of the materials whose temporary suppression is sought, I have been influenced by the following consideration.

The objective contents of the materials sought to be disclosed, besides being only debatably admissible, are so repulsive and inflammatory in nature, as to compel the conclusion that their release would in all probability impair defendant's right to a fair trial in whatever vicinity they might be released.

I am, I may add, entirely at a loss to understand why the district attorney favors the granting of an order which, if denied, can have no adverse effect upon the prosecution, but, if granted, might very well inject irremediable prejudice into these proceedings.