[L.A. No. 31876. Dec. 31, 1984.]

PRESS-ENTERPRISE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
ROBERT RUBANE DIAZ, Real Party in Interest.

**COUNSEL**

Thompson & Colegate, James D. Ward and Sharon J. Waters for Petitioner.

Edward J. McIntyre, Marilyn L. Huff, John Allcock, Gray, Cary, Ames & Frye, Harold W. Fuson, Jr., Douglas T. Foster, Charity Kenyon, Diepenbrock, Wulff, Plant & Hannegan, Edward P. Davis, Jr., and Rankin, Oneal, Center, Luckhardt, Lund & Hinshaw as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Michael B. Lewis, Public Defender, and John J. Lee, Deputy Public Defender, for Real Party in Interest.

Diane C. Campbell, Ephraim Margolin and Sandra Coliver as Amici Curiae on behalf of Real Party in Interest.

## Opinion

**BROUSSARD, J.**—In the instant case we consider the appropriate standard to be applied by a magistrate in determining whether the public's right of access to preliminary hearings should be limited due to the risk of impairment of a defendant's right to a fair trial.

The real party in interest, Robert Rubane Diaz, was charged by a complaint filed in the municipal court with the murder of 12 hospital patients by administering massive doses of the heart drug lidocaine. He was also charged with special circumstances. At the time of the preliminary hearing there were many representatives of television stations, radio stations and newspapers present. On Diaz' motion pursuant to Penal Code section 868,[1] the court ordered the preliminary hearing closed to the press and public. The preliminary hearing was held over a period of 41 days, and Diaz was held to answer on all charges. The judge sealed all transcripts.

About seven months later, petitioner sought to gain access to the transcripts in the superior court. The prosecution joined in the motion. Diaz opposed, presenting evidence of the widespread publicity given to the case by the media, some of which had continued until the time of the hearing. The judge, concerned that releasing the transcript might require either delay of the proceedings or transfer of the trial to another jurisdiction, pointed out that defendant had a right to trial without undue delay and a Sixth Amendment right to trial in the vicinage. The judge found that "there is a reasonable likelihood that making all or any part of the transcript public might prejudice the defendant's right to a fair and impartial trial." He ordered that the transcript remain sealed, and petitioner commenced the instant mandamus proceeding.[2]

### The Asserted Constitutional Right of Access

Prior to its 1982 amendment, section 868 provided that upon the request of the defendant, the magistrate shall exclude the public from the preliminary examination. In *San Jose Mercury-News* v. *Municipal Court, supra,* 30 Cal.3d 498, the statute was upheld against a claim that the federal and state Constitutions give the press and public a right of access to preliminary hearings that may be foreclosed only when outweighed by defendant's interest in a fair trial and that section 868 violated that right because it had no provision for balancing of competing interests in individual cases.

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

[2] The trial has been completed. Although technically moot, the case presents an important question affecting the public interest, and review is appropriate. (*San Jose Mercury-News* v. *Municipal Court* (1982) 30 Cal.3d 498, 501, fn. 2 [179 Cal.Rptr. 772, 638 P.2d 55].)

In considering the claim of violation of federal constitutional rights, the court recognized that the United States Supreme Court has held that the First Amendment provided a qualified right of public access to the trial and that a majority of justices had recognized a qualified right of access to pretrial hearings such as suppression hearings. (30 Cal.3d at pp. 503-506.) The court pointed out that the basis of the qualified access right was the long history of trials being presumptively open and that the open trial tradition guards against persecution and favoritism, increases public awareness of the judicial process, inspires confidence in the criminal justice system, and serves the cathartic needs of the community. (30 Cal.3d at p. 505.)

In *San Jose Mercury-News,* the court also pointed out that seven of the United States Supreme Court justices had stated that preliminary hearings, unlike trials, were traditionally private at common law and were distinguishable from pretrial suppression hearings. (30 Cal.3d at pp. 504-506.) This court concluded that no right of access arose under the First Amendment. (30 Cal.3d at p. 506.)

In rejecting the claim of conflict with the California Constitution, the court recognized that state constitutional guarantees may give greater protection to some rights than the federal counterparts, but concluded that the Legislature reasonably gives fair trial rights a preference over access rights in certain classes of proceedings where danger of prejudice is strong and proof on a case-by-case basis appears difficult and that section 868 was a permitted means of protecting defendants' rights to a fair trial free of juror bias.[3] (30 Cal.3d at pp. 506-514.)

■ Petitioner urges that recent decisions of the United States Supreme Court require repudiation of the conclusion in *San Jose Mercury-News* that the First Amendment does not provide a right of access to a preliminary hearing. *Globe Newspaper Co.* v. *Superior Court* (1982) 457 U.S. 596 [73 L.Ed.2d 248, 102 S.Ct. 2613], involved a Massachusetts statute requiring mandatory closure of trial during the testimony of a minor sex victim. The court again relied upon the tradition of trials being open to the press and public, and it asserted that before a state may deny the right of access it must be shown that the denial is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest. (457 U.S. at pp. 603-607 [73 L.Ed.2d at pp. 254-257].) Responding to an argument that trials have not always been open during testimony of minor sex victims, the court in a footnote stated that whether the First Amendment right of access can

---

[3]Because they bear on the proper interpretation of section 868 as amended in 1982, the policy concerns which led to the court's conclusion will be discussed in detail in the statutory portion of the opinion.

be restricted in the context of any criminal trial depends not on the historical openness of that type of trial but rather on the state interests assertedly supporting the restriction. (457 U.S. at p. 605, fn. 13 [73 L.Ed.2d at p. 256].) The court concluded that the Massachusetts statute was not narrowly tailored to accommodate the state's compelling interest in protecting the physical and psychological well-being of a minor and that rather than mandatory closure the state's interest may be protected by a case-by-case determination whether closure is necessary to protect the welfare of the minor. (457 U.S. at p. 608 [73 L.Ed.2d at p. 258].)

The second case relied upon by petitioner is *Press Enterprise Company* v. *Superior Court* (1984) 464 U.S. 501 [78 L.Ed.2d 629, 104 S.Ct. 819], where the court held that an order closing voir dire proceedings was invalid on the ground that the trial judge had failed to consider alternative measures. In a concurring opinion, Justice Stevens stated that the purpose of the access right is assuring freedom of communication on matters relating to the functioning of government and that "the distinction between trials and other official proceedings is not necessarily dispositive, or even important, in evaluating the First Amendment issues." (464 U.S. at p. 516 [78 L.Ed.2d at p. 642, 104 S.Ct. at p. 828].)

Neither case warrants repudiation of the conclusion in *San Jose Mercury-News* that the First Amendment does not provide a right of access to preliminary hearings. Both cases were concerned with the right of access to trials rather than preliminary hearings. The problem of potential prejudice to the defendant is substantially different in relation to public trials than it is in relation to public preliminary hearings. In *Press Enterprise Company* the court emphasized that prejudice to the defendant remains the primary concern, stating: "No right ranks higher than the right of the accused to a fair trial." (464 U.S. at p. 508 [78 L.Ed.2d at p. 637, 104 S.Ct. at p. 823].) The main concern asserted in both cases to justify closure was not prejudice to the defendant but the interests of others, i.e., the privacy rights of prospective jurors and the physical and psychological well-being of minor sex victims.

While a footnote in *Globe Newspaper Co.* suggests that historical openness may no longer be an element of the First Amendment access right, the footnote by its own language is limited to trials. (*Globe Newspaper Co.* v. *Superior Court, supra,* 457 U.S. at p. 605, fn. 13 [73 L.Ed.2d at p. 256].) The subsequent *Press Enterprise Company* decision not only indicates that one of the bases of the access right to trials as established by *Richmond Newspapers, Inc.* v. *Virginia* (1980) 448 U.S. 555 [65 L.Ed.2d 973, 100 S.Ct. 2814] is that trials were open at the time of the adoption of the First Amendment but also devotes the first portion of the opinion to establish that

at the time of the adoption of the First Amendment public jury selection was the common practice in America. While the statement of Justice Stevens relied upon by petitioner is to the effect that the access right is not limited to trials, it does not establish that historical conditions are irrelevant because he also states that the question before the court "'focuses on First . . . Amendment values and the historical backdrop against which the First Amendment was enacted.'" (464 U.S. at p. 517 [78 L.Ed.2d at p. 642, 104 S.Ct. at p. 828].)

We conclude that petitioner and amici have failed to establish a basis for repudiating the conclusion in the 1982 decision in *San Jose Mercury-News* that the First Amendment access right does not extend to preliminary hearings. In addition, petitioner and amici have not pointed to any matters warranting repudiation of the portion of *San Jose Mercury-News* relating to the California Constitution.

### The Statutory Access Right

Shortly after the decision in 1982 in *San Jose Mercury-News*, the Legislature amended section 868 to delete the defendant's absolute right to closure and to establish a right of access to preliminary hearings. The amended section reads: "The examination shall be open and public. However, upon the request of the defendant and a finding by the magistrate that exclusion of the public is *necessary* in order to protect the defendant's right to a fair and impartial trial, the magistrate shall exclude from the examination [all but certain enumerated officials, defendant and his counsel, and the prosecuting witness and a friend]." (Italics added.)

█ The parties and amici dispute the appropriate standard to be applied by the magistrate in determining whether exclusion is "necessary" in order to protect the defendant's right to a fair and impartial trial. Some of the language in the brief submitted by amici suggests that exclusion is appropriate only if the magistrate finds that failure to exclude will result in an unfair trial.

Petitioner argues for the test set forth in *United States* v. *Brooklier* (9th Cir. 1982) 685 F.2d 1162, 1167 where the court stated that an "accused who seeks closure must establish 'that it is strictly and inescapably necessary in order to protect the fair trial guarantee.' This burden may be discharged by demonstrating: (1) 'a substantial probability that irreparable damage to his fair-trial right will result from conducting the proceeding in public'; (2) 'a substantial probability that alternatives to closure will not protect adequately his right to a fair trial'; and (3) 'a substantial probability that closure will be effective in protecting against the perceived harm.'"

*Brooklier* did not involve preliminary hearings but rather hearings on motions to suppress and the juror voir dire. The *Brooklier* test is based on the dissenting opinion of Justice Blackmun in *Gannett Co.* v. *DePasquale* (1979) 443 U.S. 368, 406, 440-446 [61 L.Ed.2d 608, 659-664, 99 S.Ct. 2898]. Justice Blackmun, joined by Justices Brennan, White and Marshall, urged that the Sixth Amendment right to a public trial was not personal to the defendant but established an access right for the public. The majority rejected that view.[4]

Defendant urges that the proper test is that the preliminary hearing must be closed upon a defendant's request if the magistrate finds "a reasonable likelihood" of substantial prejudice which would impinge upon the right to a fair trial. The trial court purported to apply this test. The test appears to be based on the concurring opinion of Justice Powell in *Gannett Co.* v. *DePasquale, supra,* 443 U.S. 368, 397-403 [61 L.Ed.2d at pp. 632-636]. He joined the majority opinion in holding that the Sixth Amendment did not confer access rights but concluded that the First Amendment provides a limited right of access to suppression hearings. He rejected Justice Blackmun's test for closure on the ground that it was inflexible and could prejudice defendant's rights and disserve society's interest in the fair and prompt disposition of criminal trials. He concluded that the test is whether "a fair trial for the defendant is likely to be jeopardized by publicity, if members of the press and public are present and free to report prejudicial evidence that will not be presented to the jury." (443 U.S. at p. 400 [61 L.Ed.2d at p. 634].) He stated that it is the defendant's responsibility to show that public access would interfere with the fairness of his trial but that those opposing closure have the burden of showing that alternative procedures are available that would eliminate the danger of prejudice.[5]

---

[4]Justice Blackmun recognized that in some cases of suppression hearings closure might be justified. "The trial judge faced with a closure motion has the more difficult task of looking into the future. I do not mean to suggest that only in the egregious circumstances of cases such as *Estes* and *Sheppard* would closure be permissible. But to some extent the harm that the defendant fears from publicity is also speculative.

"If, after considering the essential factors, the trial court determines that the accused has carried his burden of establishing that closure is necessary, the Sixth Amendment is no barrier to reasonable restrictions on public access designed to meet that need. Any restrictions imposed, however, should extend no further than the circumstances reasonably require. Thus, it might well be possible to exclude the public from only those portions of the proceeding at which the prejudicial information would be disclosed, while admitting to other portions where the information the accused seeks to suppress would not be revealed. *United States* v. *Cianfrani,* 573 F.2d, at 854. Further, closure should be temporary in that the court should ensure that an accurate record is made of those proceedings held *in camera* and that the public is permitted proper access to the record as soon as the threat to the defendant's fair-trial right has passed." (443 U.S. at pp. 444-445 [61 L.Ed.2d at pp. 662-663].)

[5]In *Gannett Co.* the trial judge found "a reasonable probability" of prejudice, and the majority held this would overcome a First Amendment right of access.

The test of reasonable likelihood that the defendant will not receive a fair and impartial trial is used in considering motions for change of venue. (*Odle* v. *Superior Court* (1982) 32 Cal.3d 932, 937 [187 Cal.Rptr. 455, 654 P.2d 225]; *Martinez* v. *Superior Court* (1981) 29 Cal.3d 574, 578 [174 Cal.Rptr. 701, 629 P.2d 502].) Also the test has been used with respect to gag orders. (*Younger* v. *Smith* (1973) 30 Cal.App.3d 138, 159-164 [106 Cal.Rptr. 225]; see *Brian W.* v. *Superior Court* (1978) 20 Cal.3d 618, 624, fn. 7 [143 Cal.Rptr. 717, 574 P.2d 788].) The Legislature has established a standard of reasonable likelihood of prejudice to the defendant to be applied in determining whether a grand jury transcript should be unsealed. (§ 938.1, subd. (b).) The test has also been applied in determining whether a purported confession should be suppressed pending trial. (*Cromer* v. *Superior Court* (1980) 109 Cal.App.3d 728, 731 et seq. [167 Cal.Rptr. 671].).

The legislative history of the amendment to section 868 shows that the Legislature intended the courts to determine the appropriate standard. Assembly Bill No. 277 as originally introduced and as adopted opens preliminary hearings unless the magistrate finds it "necessary" to close to protect the defendant's right to a fair trial. As originally worded, the bill provided that the finding that it is necessary to close "would require a demonstration of a clear and present danger of irreparable damage to the defendant's right to a fair and impartial trial, that the alternatives to closure will not adequately protect that right, and that the closure will effectively protect against the perceived harm." In the Assembly, the second condition relating to alternatives to closure was deleted before the bill was passed.

Clear and present danger language was contained, although in slightly different form, in the bill passed by the Senate, but the Conference Committee report was rejected in the Assembly, and the bill was amended in the Assembly to substitute "preponderant probability" for "clear and present danger." The bill was amended in a second Conference Committee report to delete all of the language defining "necessary," and as finally approved, the amendment to section 868 provides no definition of "necessary." (The bill as enacted also dealt with matters other than the amendment of section 868.)

The deletion of any definition of the word "necessary" shows that, while the Legislature concluded that preliminary hearings should be public unless there was conflict with the defendant's right to a fair trial, the Legislature intended that the courts should determine the standard to be applied in weighing the public's right of access against the defendant's fair trial right.

In *San Jose Mercury-News*, the court detailed the policy factors in favor of holding preliminary hearings in public: Exposure of governmental func-

tions to public view serves societal interests in a democratic government. Open preliminary hearings guard against persecution and favoritism, increase public awareness of the judicial process, inspire confidence in the criminal justice system, and serve the cathartic needs of the community. Preliminary hearings are an important step in the accusatorial process. There are many similarities to the trial; witnesses may be cross-examined, each side has an incentive to prevail, and the hearing may reveal weaknesses in the prosecution or defense, forecasting the ultimate disposition.

Often the preliminary hearing turns out to be the only judicial proceeding of substantial importance that takes place during a criminal prosecution because so many cases are disposed of without trial. The hearing often provides the forum for issues involving police misconduct and exclusion of evidence. The court also pointed out that pretrial publicity, even pervasive adverse publicity, does not invariably lead to an unfair trial. (30 Cal.3d at pp. 505, 509-514.)

On the other hand, the court in *San Jose Mercury-News* pointed to several concerns militating against a public preliminary hearing and against requiring defendant to establish that prejudice will occur from a public hearing. While the Legislature has since amended section 868 to delete the defendant's absolute right to closure, the concerns enumerated in *San Jose Mercury-News* obviously bear upon our determination of the appropriate standard to be applied under the amended statute.

The concerns militating in favor of a right of closure recognized by the court include: The evidence at the preliminary hearing may be one-sided and misleading because the testimony is often that of the prosecution only—the defense remaining silent if it appears that reasonable or probable cause has been established. Many nonlawyers may not be aware of the function of a preliminary hearing which is not a trial with the danger that they may ascribe to a one-sided hearing the legitimacy and credibility of a trial. Magistrates may err in their evidentiary hearings, and there is a danger that highly prejudicial evidence which will be inadmissible at trial will be admitted or adverted to and reported by the media.

In addition factual, relevant reporting, no less than inflammatory publicity, may threaten a defendant's right to a fair trial by producing a jury pool "within which a defendant's guilt has already been ascribed." (30 Cal.3d at p. 512.)

Because the preliminary hearing takes place at an early stage in the criminal prosecution, it may be difficult or impossible for the defendant to make a showing of the prejudice which will occur from publicity. At an early

stage, the community reaction and the media attitude may not be clear, and the defendant may have little knowledge of the prosecution's strategy and evidence. "Finally, certain alternate means of preventing prejudice from adverse pretrial publicity, such as gag orders or restraints on publication, can involve equal and even greater intrusions on speech and press rights. (See, e.g., *Nebraska Press Assn., supra,* 427 U.S. 539, 556-560 [49 L.Ed.2d 683, 695-698]; *Brian W., supra,* 20 Cal.3d 618, 624, fn. 7.) Changes of venue or continuances may subject the parties and courts to considerable inconvenience or expense and may even violate the defendant's right to speedy trial in the vicinage. (U.S. Const., Amends. VI, XIV; Cal. Const., art. I, § 15; *Brian W., supra,* 20 Cal.3d at p. 625.)" *(San Jose Mercury-News* v. *Municipal Court, supra,* 30 Cal.3d at pp. 511-513.)

We reject the view that a magistrate in ruling on a request to close the preliminary examination must find that in fact an open preliminary hearing will result in a denial of fair trial. At the time that the magistrate makes the finding predictions must be made as to the amount and nature of publicity which will result from an open preliminary hearing and as to the impact of the anticipated publicity. The legislative history of the two standards contemplated, "clear and present danger" and "preponderant probability," indicates that the Legislature had in mind a lesser standard than a factual finding of actual prejudice.

The legislative history of the two standards contemplated, as well as its use of the word "necessary," makes clear that the Legislature was of the view that open preliminary hearings would be the rule rather than the exception. "Necessary" is often used in the sense of essential (Webster's New Internat. Dict. (2d ed. 1959) p. 1635), and the terms "clear and present danger" and "preponderant possibility" reflect that a substantial showing of potential prejudice must be made before the preliminary hearing may be closed.

The test urged by defendant, a reasonable likelihood of substantial prejudice, and the test urged by petitioner, a substantial probability of irreparable damage, meet the requirement of a substantial showing of potential prejudice. While there is some difference between the two standards, it obviously is not very great.

Weighing the language of section 868, the legislative history, and the policy factors discussed above, we conclude that the magistrate shall close the preliminary hearing upon finding a reasonable likelihood of substantial prejudice which would impinge upon the right to a fair trial. Penal Code section 868 makes clear that the primary right is the right to a fair trial and that the public's right of access must give way when there is conflict.

Once a defendant establishes a reasonable likelihood of substantial prejudice, there is a clear and present danger of prejudice, and the prosecution or media may overcome the defendant's showing by a preponderance of the evidence to the effect that there is no reasonable likelihood of prejudice. But if the showing in opposition fails to overcome the defendant's showing that there is a reasonable likelihood of substantial prejudice, it would be improper for the magistrate to jeopardize the fair trial right by permitting a public preliminary hearing. The primacy of the right to fair trial, viewed in the light of the policy consideration in favor of closure set forth above, requires us to conclude that a defendant who has established a reasonable likelihood of substantial prejudice after all of the evidence is considered may not be compelled to risk his fair trial right by an open hearing.

The peremptory writ of mandate is denied. The alternative writ, having served its purpose, is discharged.

Bird, C. J., Mosk, J., Kaus, J., and Reynoso, J., concurred.

**GRODIN, J.,** Concurring.—The majority's determination that the First Amendment provides no right of access to preliminary hearings is unnecessary to the decision of this case, and I do not join in it. The only constitutional question presented is whether the First Amendment requires a *greater* right of access than the Legislature has seen fit to establish by statute. I agree with the majority that by its amendment to section 868 the Legislature has decided that open preliminary hearings should be the "rule rather than the exception" (*ante,* p. 781), the exception existing only when exclusion of the public is, to use the language of the statute, "necessary in order to protect the defendant's right to fair and impartial trial."

I agree also that the determination of "necessity" must inevitably be a matter of judgment based upon probabilities, and that the phrase "substantial showing of potential prejudice" (or, what amounts to the same thing, a "reasonable likelihood of substantial prejudice") constitutes a fair description of the requisite assessment. I do not believe that the First Amendment would require more than that.

**LUCAS, J.,** Concurring and Dissenting.—I concur in the judgment but dissent to the majority's analysis. By reason of the 1982 amendment to Penal Code section 868, preliminary hearings are required to be "open and public" unless the magistrate expressly finds that exclusion of the public is "necessary" to protect the defendant's right to a fair and impartial trial. In the present case, on denying petitioner's motion to inspect the preliminary hearing transcripts, the trial court found merely that there was a "reasonable likelihood" of prejudice to the defendant, a standard which the majority

now embraces. Yet a showing of "reasonable likelihood" of prejudice is not equivalent to a showing of *necessity.* In my view, the majority's new standard improperly ignores the statutory language.

As the majority concedes, "The legislative history . . . as well as its use of the word 'necessary,' makes clear that the Legislature was of the view that open preliminary hearings would be the rule rather than the exception. 'Necessary' is often used in the sense of essential . . . ." (*Ante,* p. 781.) Although a showing of *actual* prejudice may be difficult to marshall in advance of trial, certainly the defendant should be required at least to demonstrate a *substantial probability* of prejudice. (See *United States* v. *Brooklier* (9th Cir. 1982) 685 F.2d 1162, 1167.) No such showing was made here.

As the trial is completed and the case is now moot, I concur in the judgment denying the peremptory writ.