Merrimack
No. 82-504

THE STATE OF NEW HAMPSHIRE

v.

CINDY KEITH DAMIANO

April 13, 1984

744

*Gregory H. Smith*, attorney general (*James D. Cahill, III*, attorney, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.  The defendant appeals her convictions of conspiracy to commit arson, RSA 629:3, I, and criminal liability for conduct of another, RSA 626:8, II(c). She alleges that the trial court erred in denying her motions to suppress certain statements and to discover grand jury testimony. For the reasons that follow, we affirm.

On October 26, 1981, a fire was set in a shed attached to a boarding house located at 5 Rollins Street in Concord. Rachel Kirouac, on December 3, 1981, confessed to setting the fire and implicated the defendant in the crime. On December 28, 1981, the defendant, allegedly in response to Ms. Kirouac's confession, made certain inculpatory statements to the police regarding the fire.

On March 25, 1982, Ms. Kirouac testified before the grand jury in the arson investigation. On the same day, the grand jury returned indictments against the defendant for conspiracy to commit arson and for criminal liability for the conduct of another. Pursuant to a court order granting a motion filed by the State, the grand jury testimony was recorded and transcribed. On May 20, 1982, this

court issued its original opinion in *State v. Purrington* (later modified on July 21, 1982), prohibiting the transcription and discovery of grand jury testimony. Based on that decision, the State moved to seal the grand jury transcript, and the trial court granted the motion.

Prior to trial, the defendant moved to discover the grand jury testimony of Ms. Kirouac and to suppress her statements to the police, alleging her due process rights were violated. The Trial Court (*Souter*, J.) denied both motions, and the case went to trial on July 27, 1982. At trial, police officer James Cross testified as to the statements made by the defendant on December 28, 1981.

Based on the modified opinion in *State v. Purrington*, 122 N.H. 458, 462, 446 A.2d 451, 454 (1982), allowing the trial court in its discretion to permit the discovery of grand jury testimony transcribed before May 20, 1982, the defendant, at the close of the State's case, renewed her motion to discover the grand jury testimony of Ms. Kirouac. That testimony was transcribed before May 20, 1982. The court again denied the motion. After trial, the defendant was found guilty and appealed.

■ First, the defendant argues that her statements to the police were involuntary and, therefore, were inadmissible under the due process clauses of the State and Federal Constitutions. In construing the due process clause of the State Constitution, we refer to federal cases for guidance only and do not consider our results bound by those decisions. *See State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983).

■■ The New Hampshire Constitution guarantees every citizen due process of the law. N.H. CONST. pt. I, art. 15; *see State v. Baillargeon*, 124 N.H. 355, 362, 470 A.2d 915, 919 (1983). Due process requires not only that the State act according to the laws of the land, but also that its actions be "consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Herbert v. Louisiana*, 272 U.S. 312, 316 (1926).

■ Such fundamental principles are implicated when the State uses an individual's involuntary statements to obtain a conviction against that individual. The factors underlying the belief that such statements should not be admitted into evidence are the unreliability of the confession, *see State v. Howard*, 17 N.H. 172, 182 (1845), the lack of rational choice of the accused, and society's conclusion that the State should not take advantage of an individual who is incapable of making a free choice. *See Blackburn v. Alabama*, 361 U.S. 199, 207 (1960); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 224–25 (1973).

■■ No single definition of voluntariness is sufficient to cover the range of situations in which the determination of voluntariness must be made. However, the nucleus of the inquiry is whether the actions of an individual are "the product of an essentially free and unconstrained choice." *State v. Copeland*, 124 N.H. 90, 92, 467 A.2d 238, 240 (1983) (quoting *Schneckloth v. Bustamonte, supra* at 225). If the statements are the product of a will overborne by police tactics, *see State v. Hamson*, 104 N.H. 526, 529, 191 A.2d 89, 91 (1963), or of a mind incapable of a conscious choice, *see State v. Goddard*, 122 N.H. 471, 446 A.2d 456 (1982); *Blackburn v. Alabama supra; cf. State v. Osborne*, 119 N.H. 427, 433, 402 A.2d 493, 497 (1979) (capacity to consent to a search), then the statements are inadmissible at trial. *See State v. Nash*, 119 N.H. 728, 733, 407 A.2d 365, 368 (1979).

■ The due process clause of the State Constitution requires that the determination of voluntariness be made in light of "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte, supra* at 226; *cf. State v. Scarborough*, 124 N.H. 363, 370, 470 A.2d 909, 914 (1983) (determination of waiver of State constitutional right to counsel depends on all the particular facts and circumstances in each case). In this case, the defendant argues that her "borderline psychiatric disorder," to which the court-appointed psychiatrist testified, necessitates a finding that her statements were involuntary.

■■ The due process clause of the State Constitution requires us to label, as involuntary, the statements of an individual who, because of a mental condition, cannot make a meaningful choice. *Cf. State v. Goddard supra* (reasonable doubt existed as to defendant's ability to voluntarily waive his rights and confess when he was experiencing *delirium tremens*). However, mental illness does not, as a matter of law, render a confession involuntary. Rather, the trial court still must determine whether, given the totality of the circumstances, the defendant's statements were "the product of a rational intellect and a free will." *Blackburn v. Alabama, supra* at 208.

■ The trial court, after listening to the testimony of the psychiatrist, the defendant, and the police officers, found that the State had proved beyond a reasonable doubt that the defendant's statements were voluntary. *See State v. Phinney*, 117 N.H. 145, 146–47, 370 A.2d 1153, 1154 (1977). On our review of the record, we cannot say that the trial court's finding was contrary to the weight of the evidence and, accordingly, we affirm the denial of the motion to suppress. *See State v. Reynolds*, 124 N.H. 428, 471 A.2d 1172 (1984).

748

The defendant also claims that her right to due process was violated because she was not warned that her statements could be used against her. Ordinarily such a warning is given as one of the procedural protections provided under the constitutional right against involuntary self-incrimination. N.H. CONST. pt. I, art. 15; *State v. Nash*, 119 N.H. 728, 730, 407 A.2d 365, 367 (1979); *see Miranda v. Arizona*, 384 U.S. 436, 469 (1966). However, these procedural protections attach only after an individual has been taken into custody. *See State v. Tapply*, 124 N.H. 318, 325, 470 A.2d 900, 905 (1983).

The defendant asks us to hold that due process requires that the warning "anything said can and will be used against the individual in court" be given even in pre-custodial settings whenever the defendant, because of a pre-existing relationship with the police, believes that the statements will be held in confidence. The defendant argues that she had a prior relationship with the police as an informant and as a friend, and thus was entitled to that warning. We disagree.

We hold that the requirement that a defendant's statements be found voluntary is adequate to protect the defendant's due process rights. The determination of voluntariness takes into consideration all the circumstances surrounding the giving of the defendant's statements, including the nature of the existing relationship between the defendant and the police and whether the police led the defendant to believe that her statements would be kept in confidence.

Accordingly, because the defendant's statements were voluntary, the defendant's due process rights were not violated. Additionally, we find that our conclusions based on our State Constitution offend none of the provisions of the Federal Constitution.

The defendant also argues that the court erred in denying her motion to discover the grand jury testimony of Ms. Kirouac.

There is no constitutional right to examine grand jury testimony under the State or the Federal Constitutions. *State v. Booton*, 114 N.H. 750, 753, 329 A.2d 376, 380 (1974), *cert. denied*, 421 U.S. 919 (1975). Moreover, this court has long recognized the traditional secrecy of grand jury proceedings. *Id.* at 755, 329 A.2d at 381. "'It has long been the policy of the law, in furtherance of justice, that the investigations and deliberations of a grand jury shall be conducted in secret, and that for most intents and purposes, all its proceedings should be legally sealed against divulgence.'" *Opinion of the Justices*, 96 N.H. 530, 531, 73 A.2d 433, 435 (1950) (citation omitted).

█ █ The requirement of grand jury secrecy is not an absolute one. Rather, whether the secrecy of the grand jury can be invaded to allow the discovery and use of grand jury testimony transcribed prior to May 20, 1982, is a matter of discretion for the trial court. *State v. Purrington*, 122 N.H. 458, 462, 446 A.2d 451, 454 (1982). This court also indicated in *Purrington* that it would *not* "sanction any future transcription of grand jury testimony." *Id.*

█ In exercising this discretionary authority whether to permit the discovery and use of grand jury testimony, the trial court must ultimately determine if it is necessary to invade the secrecy of the grand jury in order "to promote the cause of public justice, or to protect private rights." *Opinion of the Justices, supra* at 532, 73 A.2d at 435.

In the case at bar, the trial court began its consideration of the defendant's motion to discover the pertinent grand jury testimony by restating the requirement of grand jury secrecy. It found that the defendant had not shown a reason to pierce the secrecy of the grand jury that was sufficient to invoke the favorable exercise of its discretion.

The trial court arrived at its conclusion by applying the federal rule that the party seeking disclosure of grand jury proceedings must demonstrate a particularized need for discovery of the grand jury transcripts in order to overcome the traditional secrecy of the grand jury. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979); *see also United States v. Procter & Gamble*, 356 U.S. 677, 682 (1958) (the secrecy of grand jury proceedings "must not be broken except where there is a compelling necessity"). Upon a showing of particularized need, grand jury transcripts will be disclosed to prevent possible injustice. *See Douglas Oil Co. v. Petrol Stops Northwest supra.*

The trial court found that the defendant had not shown a particularized need since there was no evidence in the record, beyond defense counsel's speculation, to indicate that Ms. Kirouac had indeed made statements to the grand jury which were inconsistent with her testimony at trial or which would provide other grounds for impeachment of her credibility. It also found that the record did not show that the defendant's case would further benefit from disclosure of the grand jury transcripts after the defense counsel's "very damaging" cross-examination of Ms. Kirouac:

> "[C]ounsel for the defendant has cross-examined Rachel Kerowak [sic] fairly well. He has indeed brought out beyond any serious question that she told at least two lies to the police. That she lied under oath in this courtroom

> with respect to her knowledge of the presence of one person at 5 Rollins Street on the night in question. . . . I find no basis on the record to conclude that there's likely to be anything more or better for him [defense counsel] in the Grand Jury transcript . . . . And under the circumstances, I think there's no basis to in effect overturn the policy in favor of . . . Grand Jury secrecy."

The trial court, therefore, denied the defendant's motion to discover the grand jury testimony.

■■■ We hold that the trial court properly exercised its discretion by applying the particularized-need test to determine if disclosure of the grand jury transcripts in this case was necessary to protect the rights of the defendant and to prevent an injustice from being done. By balancing the presumptive requirement of grand jury secrecy against the defendant's showing of substantial inconsistencies in Ms. Kirouac's trial testimony, and by fairly and objectively appraising the evidence of possible irregularities in Ms. Kirouac's grand jury testimony, the trial court did not exceed the limits of sound discretion by finding that the defendant failed to provide a sufficient reason to pierce the requirement of grand jury secrecy. Without the defendant's compelling proof that her defense was "greatly prejudiced" by the lack of the grand jury transcript, *United States v. Procter & Gamble supra,* we are unable to conclude that an injustice was committed by the trial court's decision not to disclose the transcript.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.