IN RE FINAL GRAND JURY REPORT CONCERNING
THE TORRINGTON POLICE DEPARTMENT
(12674)
(12675)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued October 9—decision released December 3, 1985

*Ralph G. Elliot,* with whom was *William S. Fish, Jr.,* for the appellant (plaintiff Hartford Courant Company).

*Elliott F. Gerson,* deputy attorney general, with whom were *Peter E. Wiese,* assistant attorney general,

and, on the brief, *Joseph I. Lieberman,* attorney general, and *Stephen J. O'Neill,* assistant attorney general, for the appellant (plaintiff Lester J. Forst).

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *John J. Kelly,* chief state's attorney, and *Brian J. Kornbrath,* law student intern, for the appellee (state).

*Edward F. Spinella,* for the appellee (intervenor Robert W. DePretis).

*Joseph F. Keefe,* with whom, on the brief, was *David A. Moraghan,* for the appellees (intervenors John Meneguzzo et al.).

PETERS, C. J. The issue in this case is the extent to which the public or interested parties may have access to testimony, exhibits and evidence received by an investigatory grand jury. On January 13, 1984, the chief court administrator, acting pursuant to General Statutes § 54-47 (b),[1] appointed Judge John D. Brennan to conduct a "private" investigatory inquiry[2] into professional gambling and other crimes allegedly involving members of the Torrington police department. When he had concluded his investigation, Judge Brennan, in accordance with General Statutes

---

[1] "[General Statutes] Sec. 54-47. INVESTIGATIONS INTO COMMISSION OF CRIME. . . . (b) The chief state's attorney and the deputy chief state's attorney may also apply to the chief court administrator for an order that an inquiry be made to determine whether or not there is probable cause to believe that a crime or crimes have been committed. If the chief court administrator is satisfied from the application and any other papers or evidence submitted in support thereof that the administration of justice requires such an inquiry, he shall order that it be made and shall appoint a judge, a state referee or any three judges of the superior court to conduct the inquiry, with the assistance of the chief state's attorney, deputy chief state's attorney or any state's attorney or assistant state's attorney."

[2] Under General Statutes § 54-47 (c), investigatory grand juries "shall be conducted in public or private as [the] court or chief court administrator orders."

§ 54-47 (g),[3] filed his report and all documents relating thereto with the Superior Court in the judicial district of Hartford-New Britain at Hartford. The trial court, *O'Connell, J.*, on December 10, 1984, directed release of part of the Brennan report to the public, but ordered the remainder of the report to be sealed. Thereafter, the Hartford Courant (hereinafter the Courant), the commissioner of the department of public safety (hereinafter the commissioner) and three employees of the department of public safety separately petitioned the trial court, under § 54-47 (g), for release of the transcripts and exhibits relating to that part of the report which had been made public. The petitions for release of these documents were opposed both by the office of the chief state's attorney, on behalf of the state, and by individual intervenors who had been either witnesses or the subject of testimony before the grand jury.[4] The trial court granted the petition of the commissioner in part, but denied the remaining petitions. The Courant and the commissioner have appealed.

---

[3] General Statutes § 54-47 (g) provides: "(g) At the conclusion of such inquiry the judge, referee or judges conducting the inquiry shall file with the court a report and the court shall direct whether, and to what extent, the report shall be made available to the public or interested parties. Any transcript of testimony taken at the inquiry shall likewise be filed with the court and it shall have the same powers with reference to it as it has with reference to the report; provided any person accused of crime as a result of the inquiry shall have access at all reasonable times to the transcript of his own testimony given by him in such inquiry."

[4] The trial court granted motions to intervene and object to release of the grand jury transcripts filed by John Meneguzzo and Paul Seizer, who alleged that they had testified before the grand jury under grants of immunity, Robert DePretis, who alleged that he had testified in reliance on promises of secrecy, and Dominic Antonelli, who alleged that he was a target of the grand jury inquiry. These individuals have filed a joint brief as appellees in this court. Two other individuals who testified before the grand jury, Enrico Soliani and Gerald Peters, were also permitted to intervene in the trial court to object to release of the transcripts but they have not participated in this appeal.

The facts underlying the present appeal are undisputed. The part of the Brennan report that was made public by the trial court[5] contained a number of observations that were highly critical of the performance of individually named state police officers and of the division of state police in general. The report was especially critical of the manner in which the state police had conducted an investigation of former Chief Justice John A. Speziale. The report suggested that its findings "may call for action by various administrative agencies." The commissioner of public safety is the administrative head and commanding officer of the state police. General Statutes § 29-1b (b). The Brennan report engendered much public comment.

The petition of the Hartford Courant for release of the transcript invoked the portion of § 54-47 (g) that authorizes the court to make a transcript of investigatory grand jury proceedings available to "the public." The Courant premised its petition on significant public interest in full disclosure of the evidence that had led to the disturbing findings contained in the Brennan report.

The petition of the commissioner of public safety relied on the provision of § 54-47 (g) authorizing release of grand jury transcripts to "interested parties." The commissioner represented that the allegations contained in the Brennan report required him to undertake an investigation of the conduct of the state police. For his investigation, he alleged his need for access to and copies of all relevant testimony, exhibits and evidence introduced before the grand jury. He claimed furthermore that his investigation would require the questioning of the witnesses before the grand jury, and he therefore asked that they be released from their oath

[5] We may take judicial notice of a report that has been filed with the Superior Court and has been made public by order of that court. *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 527–28, 294 A.2d 633 (1972).

of secrecy. Finally, he sought permission to share and use this information as he deemed proper in the course of his investigation and in taking appropriate action.

During the hearings held on these petitions, the trial court's interim rulings granted the commissioner's petition in part. The court accepted a stipulation that the commissioner would need the transcripts to conduct the most thorough investigation possible. The court thereafter released to the commissioner grand jury materials consisting of testimony of state police officers Bernard DePrimo, John Kamens and Orlando Moranino. These materials were made public by the commissioner. The court also lifted the oath of secrecy to the extent that it prevented grand jury witnesses from answering questions of investigators representing the commissioner.

In the process of its final ruling on these petitions, the trial court made two further significant findings of fact concerning the nature of the grand jury proceedings themselves. First, the trial court found that the grand jury investigation of the Torrington police department had not terminated upon the issuance of the Brennan report. Despite the title of the Brennan report, which appeared to signal that the Torrington inquiry had been brought to a final conclusion upon the completion of the Brennan investigation, the trial court expressly noted the appointment of a successor investigatory grand jury on the same subject. Second, the trial court determined that the testimony before the grand jury of public officials other than state troopers was closely intermeshed with testimony of and about private individuals involved in the subject matter of the investigation. The court found that the transcripts "ranged over a variety of subjects and a variety of persons, many of whom are private citizens with no connection to these proceedings other than a fleeting and casual mention of their names."

In the light of this factual record, the trial court interpreted the governing statute, § 54-47 (g), to deny each of the petitioners the full disclosure of the transcripts that each was seeking. The statute provides that "the court shall direct whether, and to what extent, the report [and the transcript] shall be made available to the public or interested parties." Recognizing that this language conferred upon the court the discretion to order disclosure, the court stated that its exercise of discretion required it to balance the public interest in disclosure against the security interest of the witnesses before the grand jury. The court noted the absence of any authoritative guidelines, either in the statute itself or in the decisions of this court, about how the court's discretion was to be exercised. Relying on the well established policy of the law that grand jury proceedings remain secret, the court therefore indicated that it would look for guidance to federal cases which have required the party seeking access to grand jury material to make a showing of particularized need for the disclosure sought. In the remainder of its opinion applying the underlying balancing test to the exercise of its discretion, however, the court did not again expressly advert to the standard of particularized need.

In order to facilitate the application of the balancing test to the facts before it, the trial court divided the grand jury transcript into two parts, one relating to the class of witnesses whom the court categorized as private citizens, and one relating to employees of the department of public safety, i.e., state troopers. For private citizens, the court held that "[t]he perils of disclosure . . . vastly outweigh any conceivable benefit to the Commissioner or to the public." The court noted the undesirability of defeating the expectations of privacy of witnesses before the investigatory grand jury and the importance of enabling the ongoing investigation then proceeding under a successor grand jury to

enlist the cooperation of future witnesses. For state troopers, the court found that the lesser expectation of privacy of public officials justified the court's limited release of their testimony to the commissioner, whose investigatory need the court acknowledged, but not to the public at large.

Accordingly, the petition of the Courant was denied in its entirety, while the petition of the commissioner was further granted in part. The commissioner was given access to the transcript of the testimony of witnesses "who are full-time permanent employees of the Department of Public Safety" but not to the transcript of any other witnesses. This further partial release to the commissioner, who had expressed his amenability "to any protective order deemed necessary by the court," was conditioned upon a detailed order precluding public disclosure of the transcripts.[6]

The Courant and the commissioner have filed separate appeals from the trial court's whole or partial denials of their petitions for disclosure. These appeals, which have been consolidated for hearing in this court, as they were in the trial court, present overlapping but not identical issues. The central issues of law that emerge from both appeals are (1) the propriety of the trial court's reliance on a standard of particularized need in its § 54-47 (g) determination, and (2) the scope of this court's review of the trial court's decision. In each appeal there are thereafter distinct questions about the application of the governing rules to the particular litigants. Opposition to the further release of transcripts has been briefed in this court not only by the office of the chief state's attorney, on behalf of the state, but also by three individuals who were witnesses

---

[6] The trial court also denied the petition for disclosure of transcripts filed by three intervenors, state police officers Orlando Moranino, Bernard DePrimo and John Kamens. After they had been afforded access to their own testimony, they sought and were denied access to the transcripts of other grand jury witnesses. They have not appealed.

before the grand jury and one who was the subject of grand jury testimony.[7] At oral argument, however, the state announced that it had decided to alter its position. It conceded that the commissioner was entitled to access, under a protective order, to "the transcripts of the testimony of the several members of the Division of Criminal Justice and local police departments who appeared before the grand jury, since these persons, like state troopers, will undoubtedly cooperate fully with any future grand juries."

I

The first issue that we must address is what standard, if any, governs the discretion conferred by § 54-47 (g) upon the trial court. How was the trial court to determine, in the language of the statute, "whether, and to what extent" to release grand jury transcripts "to the public or interested parties?"

In the absence of explicit statutory guidelines, the appellants urge us to reject the perceived limitations of a test of "particularized need" as inappropriate to the mandate of § 54-47 (g). They argue that "particularized need" is a standard that was developed to limit disclosure of materials associated with an indicting grand jury, and is irrelevant to the proceedings of an investigating grand jury. If any standard is appropriate in the present context, it should be the broad criterion of "public interest" recently adopted by the legislature in its 1985 revision of statutory authorization for investigatory grand juries. Public Acts 1985, No. 85-611. The appellants also maintain that a requirement to show "particularized need" is irreconcilable with statutory language expressly permitting disclosure to the general public.

When a statutory mandate is as ambiguous as that contained in § 54-47 (g), we need to examine the his-

---

[7] See footnote 4, supra.

tory out of which the statute evolved and the constitutional and the legislative context in which it is located. Examination of the legal landscape surrounding § 54-47 (g) will help us to determine whether the test of "particularized need" is an appropriate measure of the discretionary process that the statute envisages.

As a matter of history, grand jury proceedings have always been presumptively secret. *State* v. *Hayes,* 127 Conn. 543, 580, 18 A.2d 895 (1941); *State* v. *Kemp,* 126 Conn. 60, 68, 9 A.2d 63 (1939). We have not in the past distinguished between investigating and indicting grand juries in recognizing the need to encourage citizen cooperation which underlies the expectation that grand juries normally operate in secrecy. We decline to do so now. The function of the investigatory grand jury is to conduct an inquiry into criminal activity and to report its findings to the court. *State* v. *Moynahan,* 164 Conn. 560, 564–65, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973). What distinguishes an investigating from an indicting grand jury is that " '[g]rand-juries [of the indicting type] do not *try,* but *enquire;* they do not *condemn,* but only *accuse* . . . .' *State* v. *Wolcott,* 21 Conn. 272, 280 (1851). Investigating grand juries neither *try* nor *condemn* nor *accuse;* they only *inquire* and *report.*" (Emphasis in original.) *In re Investigation of the Grand Juror Into the Bethel Police Department,* 188 Conn. 601, 605, 452 A.2d 935 (1982). That distinction in function in no way implies a difference in the need for secrecy. Indeed, the continued vitality of the presumption of secrecy has been reenforced by the most recent legislative act concerning the investigatory grand jury. That act provides that "the finding and record of the investigation shall be sealed" in the absence of a contrary decision by a majority of the panel of the judges authorizing the investigation. Public Acts 1985, No. 85-611, § 6 (a).

As a matter of context, grand jury proceedings have repeatedly been exempted from recently expanded rights of public access to public records and public proceedings. Although constitutional guarantees of freedom of the press and freedom of speech provide public access to many governmental proceedings; *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 603–606, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982); *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 575–76, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980); these constitutional rights do not apply to proceedings before grand juries. See *United States* v. *Gurney,* 558 F.2d 1202, 1209–10 (5th Cir. 1977), cert. denied sub nom. *Miami Herald Publishing Co.* v. *Krentzman,* 435 U.S. 968, 98 S. Ct. 1606, 56 L. Ed. 2d 59 (1978); and compare *In re the Reporters Committee for Freedom of the Press,* 773 F.2d 1325 (D.C. Cir. 1985) (pretrial civil records); *Press-Enterprise* v. *Superior Court,* 37 Cal. 3d 772, 777, 691 P.2d 1026, 209 Cal. Rptr. 360 (1984) (preliminary criminal hearing). The constitution confers upon a defendant in a criminal case the right to a public trial, and hence affords access to the public; *State* v. *Sheppard,* 182 Conn. 412, 415, 438 A.2d 125 (1980); but no such right pertains to the inquiry of an investigatory grand jury, which is not a criminal proceeding and is often held in private. General Statutes § 54-47 (c). The Freedom of Information Act; General Statutes § 1-7 et seq.; guarantees public access to the records of agencies within its jurisdiction but expressly exempts, even for such agencies, records that pertain to "the detection or investigation of crime." General Statutes § 1-19 (b) (3). The statute governing a criminal defendant's access to the transcripts of proceedings before indicting grand juries; General Statutes § 54-45a; which has its basis in the constitutional right of confrontation, has been narrowly construed to minimize its intrusion on the traditional

secrecy of grand jury proceedings. *State* v. *Canady,* 187 Conn. 281, 287, 445 A.2d 895 (1982). Finally, § 54-47 (g) itself expressly mandates access only to "any person accused of crime as a result of the [grand jury] inquiry" and then only to "the transcript of his own testimony given by him in such inquiry."

In the light of this background, which cautions restraint in the disclosure of investigatory grand jury proceedings, we must determine the relationship between a test of "particularized need" and the mandate of § 54-47 (g). In that determination, we must be clear about what the test of "particularized need" encompasses. A careful reading of the case law of "particularized need" reveals that, despite its apparent linguistic rigor, "particularized need" is principally a shorthand label for the flexibility and balance that is inherent in discretionary choice.

The federal courts have developed the test of "particularized need" in response to the recognized importance of secrecy in the proper functioning of the grand jury system. *Douglas Oil Co.* v. *Petrol Stops Northwest,* 441 U.S. 211, 218–21, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979); *Dennis* v. *United States,* 384 U.S. 855, 869–70, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966); *Pittsburgh Plate Glass Co.* v. *United States,* 360 U.S. 395, 400, 79 S. Ct. 1237, 3 L. Ed. 2d 1323 (1959); *United States* v. *Procter & Gamble,* 356 U.S. 677, 681–83, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958); *United States* v. *Socony-Vacuum Oil Co.,* 310 U.S. 150, 231–37, 60 S. Ct. 811, 84 L. Ed. 1129 (1940).[8] Safeguarding the confidentiality of grand jury proceedings serves a number of functions. "First,

---

[8] Although much of the federal case law involves interpretation of rule 6 of the Federal Rules of Criminal Procedure, the standard of "particularized need" antedates adoption of that rule. See *United States* v. *Sells Engineering, Inc.,* 463 U.S. 418, 449, 103 S. Ct. 3133, 77 L. Ed. 2d 743 (1983) (Burger, J., dissenting); Orfield, The Federal Grand Jury, 22 F.R.D. 343, 346 (1959).

if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil Co.* v. *Petrol Stops Northwest,* supra, 219. Because this reasoning is premised on a functional analysis of how grand juries operate, it is as persuasive for state investigative grand juries as it is for federal indicting grand juries. *State ex rel. Ronan* v. *Superior Court,* 95 Ariz. 319, 325–27, 390 P.2d 109 (1964); *Granbery* v. *District Court,* 187 Col. 316, 320, 531 P.2d 390 (1975); *Minton* v. *State,* 113 So. 2d 361, 367 (Fla. 1959); *State* v. *Martin,* 376 So. 2d 300, 304–305 (La. 1979), cert. denied, 449 U.S. 998, 101 S. Ct. 540, 66 L. Ed. 2d 297 (1980); *State* v. *Cugliata,* 372 A.2d 1019, 1025 (Me.), cert. denied, 434 U.S. 856, 98 S. Ct. 177, 54 L. Ed. 2d 128 (1977); *Silbert* v. *State,* 12 Md. App. 516, 523–24, 280 A.2d 55 (1971); *People* v. *Wimberly,* 384 Mich. 62, 69, 179 N.W.2d 623 (1970); *State* v. *Damiano,* 124 N.H. 742, 749, 474 A.2d 1045 (1984); *State* v. *Doliner,* 96 N.J. 236, 246, 475 A.2d 552 (1984); *State* v. *Baca,* 85 N.M. 55, 56–57, 508 P.2d 1352 (1973); *Matter of District Attorney,* 58 N.Y.2d 436, 443–45, 448 N.E.2d 440, 461 N.Y.S.2d 773 (1983); *Petition for Disclosure of Evidence,* 63 Ohio St. 2d 212, 216, 407 N.E.2d 513 (1980); *State ex rel. Drew* v. *Steinbock,* 286 Or. 461, 467, 595 P.2d 1234 (1979); *State* v. *Ouimette,* 110 R.I. 747, 763, 298 A.2d 124 (1972); *McManus* v. *State,* 591

S.W.2d 505, 523 (Tex. Crim. App. 1979);1 LaFave & Israel, Criminal Procedure (1984) §§ 8.3 (f), 8.5.

The principal impact of the test of particularized need has been to deny automatic access to those who seek disclosure of grand jury materials. Parties seeking grand jury transcripts must make a showing of their need for disclosure, and that showing must be balanced against the need for continued secrecy. "[I]n considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil Co.* v. *Petrol Stops Northwest,* supra, 222. Concern for possible adverse consequences in the future has meant that "the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." Id.; *Dennis* v. *United States,* supra, 870; *United States* v. *Moten,* 582 F.2d 654, 663 (2d Cir. 1978); 1 LaFave & Israel, supra, § 8.5 (g).

In the most recent reformulation by the United States Supreme Court of the "particularized need" standard, that court emphasized that the process of balancing the interests of disclosure and secrecy requires a flexible examination of all of the facts of a particular case. In *United States* v. *Sells Engineering, Inc.,* 463 U.S. 418, 442, 103 S. Ct. 3133, 77 L. Ed. 2d 743 (1983), the court directed government attorneys in the justice department's civil division to seek a court order in their pursuit of access to grand jury proceedings in a case in which the criminal proceedings had been closed. The court did not determine whether such an order should be granted. Instead, it reiterated its statement in *Douglas Oil* that " 'disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy . . . . [T]he burden of demonstrating this balance rests upon the private party seeking

disclosure. . . . [A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification. In sum . . . the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances . . . . [I]f disclosure is ordered, the court may include protective limitations on the use of the disclosed material . . . .' " *United States* v. *Sells Engineering, Inc.,* supra, 443. *Sells* stressed (p. 445) that "[t]he *Douglas Oil* standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others. . . . [T]he standard itself accommodates any relevant considerations . . . that weigh for or against disclosure in a given case."

The test of "particularized need" under the federal cases is therefore an entirely appropriate measure of the discretionary authority conferred upon the Superior Court by § 54-47 (g). To require the applicant seeking disclosure to bear the burden of articulating and substantiating a basis for the desired access to grand jury transcripts is consistent with the general rule allocating the burden of persuasion to the moving party. See, e.g., *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 358, 294 A.2d 305 (1972); *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 552–53, 219 A.2d 225 (1966). To require the trial court, once the issue has been joined,[9] to balance competing interests of disclosure and secrecy, with sensitivity to particular needs in particular circumstances,

---

[9] We need not decide whether joinder of the issues always requires a moving party. The commissioner claims that invocation of a standard of "particularized need" would deprive the trial court of the power to release grand jury materials on its own motion, a power the commissioner believes this court impliedly legitimated in *In re Investigation of the Grand Juror into the Bethel Police Department,* 188 Conn. 601, 452 A.2d 935 (1982). We decline to decide in this case whether § 54-47 (g) confers such authority on a trial court. We did not decide that question in *Bethel,* and we need not decide it today.

is consistent with the general pattern associated with the exercise of discretion. See *State* v. *Geyer,* 194 Conn. 1, 6–16, 480 A.2d 489 (1984); *State* v. *Johnson,* 190 Conn. 541, 548–49, 461 A.2d 981 (1983). The cases applying the "particularized need" test demonstrate that, while courts have been reluctant to lift the grand jury's veil of secrecy, disclosure has been ordered where a need has been shown. See, e.g., *In re Special February 1971 Grand Jury* v. *Conlisk,* 490 F.2d 894, 898 (7th Cir. 1973) (disclosure to police department inquiring into corruption); *United States* v. *Salanitro,* 437 F. Sup. 240, 246 (D. Neb. 1977) (disclosure to municipality, state bar association and state judicial qualifications commission inquiring into professional misconduct); *In re Wayne County Citizens Grand Jury,* 99 Mich. App. 749, 753, 299 N.W.2d 25 (1980) (disclosure to state bar grievance board inquiring into attorney misconduct); *State* v. *Doliner,* supra, 252–53 (disclosure to public agency inquiring into Medicaid fraud). Although none of these cases involved disclosure to the public, there may well be circumstances in which disclosure to a newspaper might fall within the guidelines of "particularized need." Once a grand jury has completed its investigation, if the witnesses whose testimony is sought have already made public statements concerning these same matters, the reasons traditionally advanced to justify nondisclosure of grand jury transcripts are significantly attenuated. *Douglas Oil Co.* v. *Petrol Stops Northwest,* supra, 221; *Dennis* v. *United States,* supra, 872 n.18; *Illinois* v. *Sarbaugh,* 552 F.2d 768, 775 (7th Cir. 1977).

In sum, the trial court in this case correctly determined that the discretion conferred upon the court by § 54-47 (g) required the court to balance the costs and the benefits of the disclosure sought by the applicants. Under our statute,[10] as under the standard of "par-

---

[10] This case must be decided according to the statute that was in effect at the time that the trial court was asked to rule on the petitions. The investigatory grand jury system was substantially revised by Public Acts 1985,

ticularized need," a petitioner seeking disclosure of investigatory grand jury transcripts must make a showing that articulates the claim that, in the particular circumstances before the court, the benefits of disclosure outweigh the benefits of continued secrecy.

## II

Having determined that the trial court invoked the proper standard in interpreting § 54-47 (g) to deny the Courant's and the commissioner's petitions for full disclosure, the second issue that we must address is whether the trial court erred in its application of this standard in the particular circumstances that the record discloses. That issue has two component parts: what is the scope of our review, and what is the result of that review.

When a matter involving a difficult balancing process has been entrusted to the discretion of the trial court, the scope of appellate review is limited. In any such review, "every reasonable presumption should be given in favor of the trial court's ruling"; *State* v. *Ryan,* 182 Conn. 335, 337, 438 A.2d 107 (1980); and we should reverse the trial court's decision "only where abuse of discretion is manifest or where an injustice appears to have been done." *State* v. *Johnson,* supra, 549. In this case, our capacity to find an abuse of discretion is diminished by the state of the record. Although we have been furnished transcripts of the hearings held by the trial court, we do not have before us, even as a sealed exhibit,[11] the grand jury transcript which the trial court, upon examination, decided not to disclose. Such a gap

No. 85-611, effective October 1, 1985. Because that legislation does not indicate that it is to be given retroactive application, its specific provisions have no bearing on the issues in this appeal.

[11] The appellants might have requested the trial court to seal the grand jury transcript and preserve it for examination by this court on appeal. Compare *State* v. *Gonzales,* 186 Conn. 426, 436, 441 A.2d 852 (1982).

in the record presents an almost insurmountable obstacle to review of the appellants' claims of error. *State v. One 1977 Buick Automobile,* 196 Conn. 471, 480, 493 A.2d 874 (1985); *Barra v. Ridgefield Card & Gift Gallery, Ltd.,* 194 Conn. 400, 407–408, 480 A.2d 552 (1984). Lacking significant information about the basis underlying the trial court's exercise of its discretion, we cannot presume that the court acted erroneously.

In these circumstances, we can find no error in the trial court's refusal to grant the petition for disclosure filed by the Hartford Courant. The Courant's petition articulated no reason why the public interest in further information about the operations of the state police outweighed the presumptive need for secrecy of grand jury investigations. Its petition did not limit the disclosure that it sought and did not particularize how such disclosure might be related to underlying information that had already been made public. On appeal, the Courant has offered no persuasive argument about how its request for disclosure can survive the trial court's unchallenged finding that testimony in the transcript relating to alleged state police misconduct cannot readily be severed from other testimony involving private citizens. Even if these obstacles to disclosure could have been overcome, the Courant's petition faces an insuperable hurdle in the trial court's other finding, also undisputed, that the grand jury proceedings concerning the Torrington police department have not yet been concluded. The cases and the commentators unanimously emphasize the importance of maintaining grand jury secrecy in order to protect pending or future investigations. *United States v. Socony-Vacuum Oil Co.,* supra, 233–34; *United States v. Moten,* supra, 662–63; *Illinois v. Sarbaugh,* supra, 775 and n.9; *In re Bonanno,* 344 F.2d 830, 834 (2d Cir. 1965); 1 LaFave & Israel, supra, § 8.5 (a) and (g). There was, therefore, no abuse of discretion in the trial court's determination

that, in its balancing of "whether, and to what extent" to order disclosure to the public, the Courant's petition should be denied.

Our review of the trial court's partial denial of the petition for disclosure filed by the commissioner of public safety is similarly governed by what the available record reveals. The trial court accepted the parties' stipulation that the commissioner needed access to the grand jury transcripts for the investigation which the Brennan report had called upon him to conduct. The commissioner himself acquiesced in making disclosure to him subject to a protective order precluding public release.[12] Nonetheless the trial court determined that, in balancing the need for disclosure against the need for secrecy in an ongoing grand jury investigation, it would limit the commissioner to the grand jury testimony of full-time permanent employees of the department of public safety.

The state has now conceded error in this determination "insofar as the trial court declined to order the disclosure to the Commissioner of Public Safety, under a protective order, of the transcripts of the testimony of the several members of the Division of Criminal Justice and local police departments who appeared before the grand jury." The state asks us to order a remand for further proceedings, including the fashioning of an appropriate protective order, limited to the scope of the concession. The concession does not include the transcripts of the testimony of private individuals or of public officials or public employees other than those listed. The state acknowledges, as it must, that its concession is not binding on this court. See *State* v. *Heinz,* 193 Conn. 612, 616, 480 A.2d 452 (1984).

---

[12] In light of this acquiescence at trial and counsel's statements reiterating that acquiescence at oral argument in this court, we need not review the terms of the protective order.

We need not determine whether, in the absence of the state's concession, we would have found an abuse of discretion in the trial court's denial to the commissioner of the full disclosure that he sought. Although the commissioner had made a strong case for his need to gain access to the transcripts, the court was entitled to weigh heavily the effect that any release of the transcripts would have on the continuing Torrington grand jury investigation. The objection of the chief state's attorney to further release of the transcripts, even to the commissioner, was undoubtedly a significant factor in the court's assessment of the possibly adverse impact of transcript disclosure on the functioning of the successor grand jury.

In the interests of justice, we have the power to remand a case for further proceedings even in the absence of reversible error by the trial court. See, e.g., *Montanaro Bros. Builders, Inc.* v. *Snow,* 190 Conn. 481, 490–91, 460 A.2d 1297 (1983); *Holland* v. *Holland,* 188 Conn. 354, 364, 449 A.2d 1010 (1982); *State* v. *Gonzales,* 186 Conn. 426, 436, 441 A.2d 852 (1982). This case requires such a remand. Under the mandate of § 54-47 (g), a court must engage in an intensely fact-bound balancing of the interests of disclosure and secrecy. The propriety of revisions in the trial court's previous ruling, in light of the state's concession, must be decided by the trial court, and not by us. Only the trial court, with access to the full grand jury transcript, can make an informed judgment about "whether, and to what extent" further disclosures to the commissioner are now warranted. The commissioner should be afforded a further opportunity to persuade the trial court that the secrecy interests of present or pending grand jury proceedings will not be adversely affected by the release to the commissioner, under a suitable protective order, of any of the transcripts he needs for the orderly investigation of his own department. After

such a hearing,[13] it is for the trial court, in the exercise of its discretion, to determine what disclosures, if any, to the commissioner the statute authorizes it to order.

There is no error with regard to the petition of the Hartford Courant; with regard to the petition of the commissioner of the department of public safety, the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[13] In the process of its reconsideration, the trial court may want to afford to the intervenors who oppose disclosure the opportunity to supplement the record with regard to their claimed expectations of privacy. See *Kaplan* v. *Kaplan,* 186 Conn. 387, 388 n.1, 441 A.2d 629 (1982). Protection of legitimate expectations of privacy is one of the factors that has been recognized as essential to proper functioning of the grand jury system. *Douglas Oil Co.* v. *Petrol Stops Northwest,* 441 U.S. 211, 219, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1978), and cases therein cited.