Grafton
No. 97-206

THE STATE OF NEW HAMPSHIRE

v.

TROY HAMMOND

December 8, 1999

*Philip T. McLaughlin*, attorney general (*Joseph N. Laplante*, assistant attorney general, on the brief and orally), for the State.

*Boyle Law Office, P.C.*, of Plymouth (*Gerard J. Boyle* on the brief and orally), for the defendant.

THAYER, J. The defendant, Troy Hammond, appeals his convictions, following a jury trial, of manslaughter, *see* RSA 630:2, (I)(b) (1996), and first degree assault, *see* RSA 631:1, (I)(d) (1996). The defendant contends that the Superior Court (*Galway*, J.) erred by: (1) ruling that the defendant's confession was admissible; (2) not

allowing the defendant's expert to testify regarding various studies; (3) allowing the case to be submitted to the jury when the State presented no evidence of a necessary element of first degree assault; and (4) imposing an excessive sentence. We affirm.

The following facts were adduced at trial. The defendant lived with the seven-month-old victim, the victim's mother, and the victim's sister at the defendant's parents' house. In September 1995, the defendant struck the victim on the head with his left hand. A few weeks later, on September 23, the defendant was left in charge of the victim while the victim's mother went to work. The defendant shook the victim when he would not stop crying. The victim stopped breathing, began to turn blue, and was rushed to Dartmouth-Hitchcock Medical Center. Two days later, the victim was declared brain dead and removed from life support.

On November 13, 1995, Detective Crate of the Enfield Police Department and Sergeant Kelleher of the New Hampshire State Police went to the defendant's place of work to serve him with a grand jury subpoena. While talking with the officers, the defendant confessed to hitting and shaking the victim. He made a written statement and accompanied the officers to the Enfield Police Department, where he went over this statement and a previous statement he had made to the police regarding the victim's injuries.

The defendant moved to suppress the oral and written confessions on the grounds that he was not given *Miranda* warnings, *see Miranda v. Arizona*, 384 U.S. 436 (1966), that the statements were not voluntary, and that the statements were obtained in violation of his right to counsel. The court denied the motion after an evidentiary hearing.

On appeal, the defendant first contends that the trial court erred in finding that he was not in custody. The State contends that this argument has not been preserved for our review. Assuming, *arguendo*, that it has been preserved, we conclude that the trial court did not err in finding that the defendant was not in custody at the time of the questioning.

■■ In order for *Miranda* warnings to be required there must be a custodial interrogation by the police. *See State v. Graca*, 142 N.H. 670, 675, 708 A.2d 393, 396 (1998). "[A]lthough we will not overturn the factual findings [of the trial court] unless they are contrary to the manifest weight of the evidence, we review the ultimate determination of custody *de novo*." *State v. Ford*, 144 N.H. 57, 63, 738 A.2d 937, 942 (1999). "Custody entitling a person to *Miranda* protections during interrogation requires formal arrest or

restraint on freedom of movement of the degree associated with formal arrest." *Graca*, 142 N.H. at 675, 708 A.2d at 396 (quotation omitted). In the absence of formal arrest, the trial court must determine whether a suspect's freedom of movement was sufficiently curtailed by considering how a reasonable person in the suspect's position would have understood the situation. *State v. Carpentier*, 132 N.H. 123, 126-27, 562 A.2d 181, 183 (1989).

■ Ample evidence supports the trial court's ruling that the defendant was not in custody. The trial court found that the two officers were not wearing their uniforms nor were their weapons visible when they questioned the defendant. Detective Crate informed the defendant several times that he was not under arrest and that he was free to leave at any time. Detective Crate asked the defendant if he wanted to do the interview at the police station or in the parking lot, and the *defendant* chose the parking lot. When Detective Crate asked the defendant if he would write out his statement, the defendant agreed and sat in the front seat of the unmarked police car with the door unlocked. Later, after driving himself to the police station, the defendant was again told he was not under arrest. At the end of the questioning, the defendant was allowed to go home. At no point in the questioning did the officers become confrontational. The trial court properly considered, *inter alia*, the "suspect's familiarity with his surroundings, the number of officers present, the degree to which the suspect was physically restrained, and the interview's duration and character," *Carpentier*, 132 N.H. at 127, 562 A.2d at 183, in determining that the defendant was not in custody. We therefore agree with the trial court's finding that the defendant was not in custody when questioned by the officers.

■ The defendant next contends that his confession was involuntary and therefore inadmissible under the Due Process Clauses of the State and Federal Constitutions. Part I, Article 15 of our State Constitution requires the State to prove that the defendant's statements were voluntary beyond a reasonable doubt. *See State v. Laurie*, 135 N.H. 438, 444, 606 A.2d 1077, 1080, *cert. denied*, 506 U.S. 886 (1992). Because our State standard "is more stringent than the preponderance of the evidence standard required under the Federal Constitution, we need review the trial court's decision only under the more demanding State constitutional standard." *Id.* at 444-45, 606 A.2d at 1080 (citation omitted).

Whether a confession is voluntary "is initially a question of fact for the trial court, whose decision will not be overturned unless it is

contrary to the manifest weight of the evidence, as viewed in the light most favorable to the State." *State v. Decker*, 138 N.H. 432, 436, 641 A.2d 226, 228 (1994). In determining whether a confession is voluntary, we look at "whether the actions of an individual are the product of an essentially free and unconstrained choice . . . [or] are the product of a will overborne by police tactics, or of a mind incapable of a conscious choice." *State v. Damiano*, 124 N.H. 742, 747, 474 A.2d 1045, 1048 (1984) (quotations and citations omitted). We examine 'the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Id.* (quotation omitted). One of the characteristics of the accused that is considered is mental condition, but "mental illness does not, as a matter of law, render a confession involuntary." *Id.*

The defendant argues that his confession was involuntary because it was made while he was still suffering from depression over the death of the victim and was conducted in a cold parking lot by an officer who was a friend of the defendant. We disagree and find that the trial court's decision that the confession was voluntary is not "contrary to the manifest weight of the evidence." *Decker*, 138 N.H. at 436, 641 A.2d at 228.

In addition to the facts previously recounted, the trial court, in finding that the confession was voluntary, pointed to the lucidity of the defendant's written statement and the fact that the defendant had been operating machinery at work moments before being interviewed. That Sergeant Kelleher knew the defendant was undergoing counseling and that the defendant was taking anti-depressant medication does not mean that the defendant's confession was involuntary because there "was nothing coercive, deceptive, or overbearing in the police's conduct." *State v. Chapman*, 135 N.H. 390, 401, 605 A.2d 1055, 1062 (1992) (confession voluntary where, although police knew the defendant was intoxicated, they did not take advantage of the intoxicated defendant). The totality of the circumstances demonstrates that the defendant's depression was not so debilitating as to prevent him from making a conscious choice to confess and that his statements were "the product of a rational intellect and a free will." *Damiano*, 124 N.H. at 747, 474 A.2d at 1048 (quotation omitted).

Moreover, the selection of Detective Crate, who had been friendly with the defendant prior to the questioning, to serve the subpoena does not change the voluntariness of the defendant's confession. The mere selection of an officer with whom the defen-

dant was familiar to serve the subpoena does not by itself amount to improper influence by the police. *Cf. Damiano*, 124 N.H. at 748, 474 A.2d at 1048-49. The defendant further contends that the detective's statement that it was time to "get this burden off his shoulders" renders the confession involuntary. This statement does not "qualify as overreaching, deceptive or coercive" action by the detective. *State v. Pierce*, 130 N.H. 7, 10, 533 A.2d 34, 37 (1987). Even if the defendant reacted to the statement by confessing, which is not clear from the record, his confession would not thereby be involuntary. *Cf. Pierce*, 130 N.H. at 11, 533 A.2d at 37 (defendant's emotional response to the execution of search warrant does not make subsequent confession involuntary). The defendant, therefore, on appeal has failed to demonstrate that the trial court's decision that the confession was voluntary beyond a reasonable doubt was "contrary to the manifest weight of the evidence." *Decker*, 138 N.H. at 436, 641 A.2d at 228.

The defendant appears to contend that one factor demonstrating that his confession was involuntary is that the police failed to read him his *Miranda* rights. As we stated earlier, the defendant was not in custody when questioned by the police and therefore the police had no duty to read him his *Miranda* rights. The failure of the police to do something that was not required cannot be grounds to render the defendant's confession involuntary. *See State v. Lewis*, 129 N.H. 787, 796-97, 533 A.2d 358, 364 (1987).

The defendant next alleges that the trial court erred in refusing to allow his expert, Dr. Gerald Gowitt, a forensic pathologist, to testify that twenty-five to fifty percent of the actual or potential young parent population are not aware of the consequences of shaking a baby. The trial court excluded this testimony because, *inter alia*, it was not reliable.

"The trial court has wide discretion in admitting or excluding an expert opinion, and we will not reverse its decision unless we find a clear abuse of discretion." *State v. Paris*, 137 N.H. 322, 332, 627 A.2d 582, 588 (1993) (quotation omitted). The defendant, as the party offering Dr. Gowitt as an expert, had the burden of establishing the witness's qualifications. *See State v. Coleman*, 133 N.H. 713, 715, 584 A.2d 755, 757 (1990). Additionally, expert testimony must be reliable in order to be admissible, *see State v. Cavaliere*, 140 N.H. 108, 109, 663 A.2d 96, 98 (1995), and "[t]he determination of whether particular expert testimony is reliable and admissible rests within the sound discretion of the trial court." *Chase v. Mary Hitchcock Mem. Hosp.*, 140 N.H. 509, 510, 668 A.2d 50, 52 (1995).

■ Dr. Gowitt's proposed testimony was based solely on an article written by Dr. J.C. Showers, which was a summary of other studies conducted by Dr. Showers. As the trial court observed, however, Dr. Gowitt "has very little, if any, independent knowledge of the study." Dr. Gowitt could not testify if the surveys in the studies were conducted orally or in written form. He could not testify positively as to how the average percentages were obtained nor how many people did not respond to the studies. The trial court also noted that Dr. Gowitt "claim[ed] no particular expertise in the area." Based on Dr. Gowitt's lack of independent knowledge about the methodology of the studies involved and the subject matter in general, the trial court did not abuse its discretion by excluding the proposed testimony as unreliable. *See Chase*, 140 N.H. at 510-12, 668 A.2d at 52-53.

■ The defendant next argues that the trial court erred in allowing the jury to consider whether the defendant committed first degree assault when, with respect to that charge, no evidence of a serious bodily injury was presented to the jury. The State argues that this issue has not been properly preserved for appeal. We agree. We have held that a defendant cannot raise sufficiency of the evidence claims on appeal for the first time. *See State v. McAdams*, 134 N.H. 445, 449, 594 A.2d 1273, 1275 (1991). The defendant does not point to any place in the record where this issue was preserved. *See* SUP. CT. R. 16(3)(b). Therefore, the defendant's appeal of this issue is procedurally barred, and we need not discuss his argument that the evidence in this case was insufficient to convict. *See McAdams*, 134 N.H. at 449, 594 A.2d at 1275.

Finally, the defendant contends that the trial court abused its discretion in imposing a twenty-to-forty year sentence. The defendant received consecutive sentences of fifteen to thirty years for the manslaughter conviction and five to ten years for the first degree assault conviction.

> [T]rial judges are vested with broad discretionary powers with regard to sentencing. To violate the New Hampshire Constitution, a sentence must be grossly disproportionate to the crime. Such an abuse of sentencing discretion will also occur if the trial court fails to consider all the relevant factors necessary to the exercise of its discretion.

*State v. Stearns*, 130 N.H. 475, 493, 547 A.2d 672, 682 (1988) (quotations, citations, and brackets omitted).

Much of the defendant's argument regarding the impropriety of the sentence focuses on the fact that the defendant should not have

been found guilty of manslaughter because his actions were not reckless. However, the defendant *was* convicted of manslaughter and therefore, by definition, of acting recklessly. *See* RSA 630:2, (I)(b). Therefore, the trial court was correct in basing the sentence on the defendant's actual conviction.

The defendant also argues that his sentence is greater than sentences imposed for similar crimes in this and other jurisdictions. With regard to the sentence for first degree assault, five to ten years consecutive to the manslaughter sentence was the sentence requested by the *defendant*; therefore, he cannot now complain. *Cf. Sullivan v. Sullivan,* 91 N.H. 341, 345, 18 A.2d 828, 831 (1941). To demonstrate that the sentence of fifteen to thirty years for manslaughter is excessive, the defendant compiled sentences handed down by the superior court for negligent homicide, manslaughter, and second degree murder cases, as well as newspaper articles about cases from a variety of jurisdictions. There is no requirement, however, that all sentences for a particular crime be identical. *Cf.* RSA 630:2, II (manslaughter shall be punishable by imprisonment for a term of not more than thirty years); *State v. W.J.T. Enterprises,* 136 N.H. 490, 495, 618 A.2d 806, 809 (1992) (within RSA 651:2 a judge has broad discretion to assign different sentences).

■ The trial court considered the traditional goals of sentencing — punishment, deterrence, and rehabilitation — in crafting the sentence. *See State v. Wentworth,* 118 N.H. 832, 842, 395 A.2d 858, 864-65 (1978). Furthermore, in constructing the sentence, the trial court considered the misrepresentations that the defendant made regarding the cause of the victim's injuries, the fact that the shaking incident was not the only instance of abuse, and the defendant's lack of remorse. Because the trial court considered all of the relevant factors in determining the sentence, we do not find that the court abused its discretion. *See Stearns,* 130 N.H. at 493, 547 A.2d at 682.

The defendant's remaining arguments are without merit and do not warrant further discussion. *See, e.g., Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.