IN RE INVESTIGATORY GRAND JURY
NUMBER 2007-04
(SC 2007-04)

Rogers, C. J., and Vertefeuille, McLachlan, Flynn and Robinson, Js.

Argued July 29—officially released September 2, 2009

*William S. Fish, Jr.*, with whom were *William H. Champlin III* and, on the brief, *Amy E. Drega*, for the petitioner (intervenor Hartford Courant Company).

*Judith Rossi*, special assistant state's attorney, with whom were *Kevin T. Kane*, chief state's attorney, and, on the brief, *Michael A. Gailor*, executive assistant state's attorney, and *Susan C. Marks*, supervisory assistant state's attorney, for the respondent (state).

*Opinion*

ROGERS, C. J. Pursuant to General Statutes § 54-47g (d),[1] the intervening petitioner, the Hartford Courant

[1] General Statutes § 54-47g provides in relevant part: "(a) Within sixty days of the conclusion of the investigation, the investigatory grand jury conducting such investigation shall file its finding with the court of the judicial district designated by the Chief Court Administrator pursuant to subsection (a) of section 54-47d, and shall file a copy of its finding with the panel and with the Chief State's Attorney or a state's attorney if such Chief State's Attorney or state's attorney made application for the investigation. . . . Such finding shall state whether or not there is probable cause to believe that a crime or crimes have been committed. . . .

"(b) The finding of the investigation shall be open to public inspection and copying at the court where it has been filed seven calendar days after it has been filed, unless within that period the Chief State's Attorney or a state's attorney with whom the finding was filed files a motion with the investigatory grand jury requesting that a part or all of such finding not be so disclosed. The finding may include all or such part of the record as the investigatory grand jury may determine, except that no part of the record shall be disclosed which contains allegations of the commission of a crime by an individual if the investigatory grand jury failed to find probable cause that such individual committed such crime unless such individual requests the release of such part of the record. In such event as much of the finding as has not been sought to be withheld from disclosure shall be disclosed promptly upon the expiration of said seven-calendar-day period.

"(c) Within fifteen calendar days of the filing of such motion, the investigatory grand jury shall conduct a hearing. The investigatory grand jury shall give written notice of such hearing to the person filing such motion and any other person the investigatory grand jury deems to be an interested party to the proceedings, which may include, but not be limited to, persons who testified or were the subject of testimony before the investigatory grand jury. Within five calendar days of the conclusion of the hearing, the investigatory grand jury shall render its decision, and shall send copies thereof to all those to whom it gave notice of the hearing. It shall deny any such motion unless it makes specific findings of fact on the record that

Company, filed this petition for review[2] of the order of the investigatory grand jury (grand jury) granting in part the motion of the respondent, the state of Connecticut, requesting that the grand jury's final report of finding (final report), which incorporated by reference its interim report of finding (interim report), not be open to public inspection and copying. The petitioner claims that the grand jury improperly granted the state's motion because both the final report and the interim report are presumptively open to the public pursuant to § 54-47g (b) and do not fall within any of the exceptions set forth in § 54-47g (c). We affirm the order of the grand jury with respect to the final report and reverse the order of the grand jury with respect to the interim report.

The record discloses the following undisputed facts. On October 24, 2007, an investigatory grand jury panel, consisting of three Superior Court judges, ordered an investigation to determine whether there was probable cause to believe that crimes had been committed by certain persons within the government of the city of Hartford (city). On November 6, 2007, the chief court administrator of the state of Connecticut appointed

there is a substantial probability that one of the following interests will be prejudiced by publicity that nondisclosure would prevent, and that reasonable alternatives to nondisclosure cannot adequately protect that interest: (1) The right of a person to a fair trial; (2) the prevention of potential defendants from fleeing; (3) the prevention of subornation of perjury or tampering with witnesses; or (4) the protection of the lives and reputations of innocent persons which would be significantly damaged by the release of uncorroborated information. Any order of nondisclosure shall be drawn to protect the interest so found.

"(d) Any person aggrieved by an order of the investigatory grand jury shall have the right to appeal such order by filing a petition for review with the Appellate Court within seventy-two hours from issuance of such order. . . ."

[2] The petitioner filed the petition for review in the Appellate Court and we transferred the petition to this court pursuant to Practice Book §§ 65-3 and 66-6.

Judge Dennis Eveleigh as an investigatory grand jury pursuant to General Statutes § 54-47d for the purpose of investigating "corruption and the misuse of public funds in the government of the [c]ity . . . in its activities and dealings with persons or firms doing business with the city." On January 13, 2009, the grand jury issued under seal an interim report. On June 29, 2009, the grand jury issued its final report, which incorporated the interim report by reference. On the same day, the state filed a motion to seal the record of the investigation and the final report pursuant to § 54-47g (a) and (b) and requested a hearing pursuant to § 54-47g (c).

The hearing on the state's motion to seal the record[3] and final report commenced on July 13, 2009. At the hearing, several persons who were referred to in the final report and who had been deemed to be interested parties under § 54-47g (c) requested through their counsel permission to view the final report before arguing on the issue of whether the report should be sealed. The grand jury ordered that each interested party could review the portion of the final report that related to that party and continued the hearing to July 20, 2009. On July 13, 2009, the petitioner filed a motion to intervene in the proceeding for the purpose of arguing that the final report should be disclosed to the public. At the July 20, 2009 hearing on the state's motion to seal, the grand jury granted the petitioner's motion to intervene and designated the petitioner as an interested party.

Thereafter, the grand jury granted in part the state's motion to seal the final report. In its memorandum of decision, the grand jury observed that § 54-47g (b) expressly prohibits the disclosure of any part of the record that "contains allegations of the commission of

---

[3] The record was sealed automatically pursuant to § 54-47g (a), and the petitioner has not filed an application for its disclosure pursuant to that statute. The sole issue in this matter is whether the grand jury properly granted the state's motion to seal the final report.

a crime by an individual if the investigatory grand jury failed to find probable cause that such individual committed such crime unless such individual requests the release of such part of the record. . . ." The grand jury concluded that, under this provision, it could not disclose the portion of the final report relating to persons for whom the jury had found no probable cause to believe that they had committed crimes. With respect to persons for whom the grand jury had found probable cause in the final report, the grand jury observed that none of them had yet been arrested and there was a possibility that they never would be. With respect to those persons, the grand jury found that "[i]f the information is made public, prospective jurors may be reading about aspects of the case that will never be disclosed in a trial." It also observed that three persons had been arrested as the result of the grand jury's findings of probable cause in the interim report and that the release of the final report could jeopardize the rights of those persons to a fair trial "due to pretrial publicity of unrelated matters." In addition, the grand jury concluded that, because none of the persons named in the final report had yet been convicted, the presumption of innocence applied and, therefore, they were "innocent persons" under § 54-47g (c) (4). It further found that some of the allegations of criminal activity in the final report were "uncorroborated or inferred . . . ." The grand jury concluded, therefore, that the release of the final report could significantly damage the lives and reputations of innocent persons. Accordingly, the grand jury granted the state's motion to seal part III of the final report, which contained the discussion section. It denied the motion with respect to parts I and II of the final report, which set forth the procedural background and the scope of the investigation. Finally, the grand jury noted that "the interim report and its findings were incorporated in the final report. The interim report has

previously been ordered sealed, and that order shall remain in effect." This petition for review followed.

The petitioner claims that the grand jury improperly determined that part III of the final report should not be disclosed under § 54-47g (c) (1) because disclosure would result in pretrial publicity that would jeopardize the fair trial rights of the persons who were arrested as the result of the probable cause findings in the interim report. The petitioner also claims that the grand jury failed to consider whether there were reasonable alternatives to nondisclosure. The petitioner further contends that the grand jury improperly granted the motion to seal with respect to the portion of the final report related to persons for whom the grand jury did not find probable cause because the grand jury did not limit its order to the portions of the final report that were related to persons who were *alleged* to have committed a crime.[4] See General Statutes § 54-47g (b) ("no part of the record shall be disclosed *which contains allegations of the commission of a crime by an individual* if the investigatory grand jury failed to find probable cause that such individual committed such crime" [emphasis added]). In addition, the petitioner claims that, in determining that the release of the final report would damage the reputations of innocent persons, the grand jury improperly interpreted the phrase "innocent persons," as used in § 54-47g (c) (4), to include persons for whom the grand jury had found probable cause to believe that they had committed crimes. Finally, the petitioner claims that the grand jury improperly sealed the interim report without making any specific findings of fact on the record regarding the reasons for sealing the report, as required by § 54-47g (c). The state and a

---

[4] The petitioner concedes in its petition for review that the grand jury, pursuant to § 54-47g (b), properly sealed the portion of the final report relating to "the one individual who had been accused of a crime as to whom the [grand jury] did not find probable cause."

number of persons who have been deemed interested parties pursuant to § 54-47g (c)[5] dispute these claims. We conclude that the grand jury properly granted the state's motion to seal the final report, but we do so on the grounds that: (1) nondisclosure of certain portions of the report was required to protect the fair trial rights of one or more of the three persons who have been arrested as the result of the findings of probable cause in the interim report; and (2) nondisclosure of the remainder of the sealed portion of the report was required to protect the reputation of an innocent person. We further conclude that the grand jury improperly ordered that the interim report should remain sealed.

At the outset, we set forth the appropriate standard of review. To the extent that the grand jury's order preventing disclosure of its final report and interim report was based on its interpretation of § 54-47g, our standard of review is plenary. See *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 7, 946 A.2d 1219 (2008). "General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its

---

[5] In the interest of confidentiality, we decline to identify the persons who were deemed interested parties under § 54-47g (c) and who participated in these proceedings on the petition for review. After the oral argument before this court on the petition for review, the grand jury panel consisting of three Superior Court judges who have been designated by the Chief Justice to receive applications for investigations into the commission of crime pursuant to General Statutes § 54-47b (4) filed an application for leave to file an amicus curiae brief. Thereafter, this court granted the application.

relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 8.

We begin our analysis with a review of the relevant statutory scheme. Section 54-47g (a) provides in relevant part that "[w]ithin sixty days of the conclusion of the investigation, the investigatory grand jury conducting such investigation shall file its finding with the court of the judicial district designated by the Chief Court Administrator pursuant to subsection (a) of section 54-47d, and shall file a copy of its finding with the panel and with the Chief State's Attorney or a state's attorney if such Chief State's Attorney or state's attorney made application for the investigation. . . ." Section 54-47g (b) provides in relevant part that "[t]he finding of the investigation shall be open to public inspection and copying at the court where it has been filed seven calendar days after it has been filed, unless within that period the Chief State's Attorney or a state's attorney with whom the finding was filed files a motion with the investigatory grand jury requesting that a part or all of such finding not be so disclosed. The finding may include all or such part of the record as the investigatory grand jury may determine, except that no part of the record shall be disclosed which contains allegations of the commission of a crime by an individual if the investigatory grand jury failed to find probable cause that such individual committed such crime unless such individual requests the release of such part of the record. . . ."

Section 54-47g (c) provides that "[w]ithin fifteen calendar days of the filing of such motion, the investigatory grand jury shall conduct a hearing. The investigatory grand jury shall give written notice of such hearing to the person filing such motion and any other person the investigatory grand jury deems to be an interested party to the proceedings, which may include, but not be lim-

ited to, persons who testified or were the subject of testimony before the investigatory grand jury. Within five calendar days of the conclusion of the hearing, the investigatory grand jury shall render its decision, and shall send copies thereof to all those to whom it gave notice of the hearing. It shall deny any such motion unless it makes specific findings of fact on the record that there is a substantial probability that one of the following interests will be prejudiced by publicity that nondisclosure would prevent, and that reasonable alternatives to nondisclosure cannot adequately protect that interest: (1) The right of a person to a fair trial; (2) the prevention of potential defendants from fleeing; (3) the prevention of subornation of perjury or tampering with witnesses; or (4) the protection of the lives and reputations of innocent persons which would be significantly damaged by the release of uncorroborated information. Any order of nondisclosure shall be drawn to protect the interest so found."

Under the common law, grand jury proceedings were presumptively secret, even after the conclusion of the investigation. See *In re Final Grand Jury Report Concerning the Torrington Police Dept.*, 197 Conn. 698, 707, 501 A.2d 377 (1985); id., 711 (interests in grand jury secrecy are not eliminated merely because grand jury has ended activities). In order to obtain access to the grand jury's report and related documents, the burden was on the person seeking disclosure to show that "in the particular circumstances [of the case], the benefits of disclosure outweigh the benefits of continued secrecy." Id., 714. In *State* v. *Rivera*, 250 Conn. 188, 205, 736 A.2d 790 (1999), this court held that, when the legislature enacted § 54-47g (b) in 1988; see Public Acts 1988, No. 88-345; it abrogated this common-law rule with respect to the finding of the grand jury and "established a rebuttable presumption of disclosure . . . ."[6]

---

[6] The presumption of secrecy continues to apply to the record of the grand jury's investigation. See General Statutes § 54-47g (a) ("any part of the record

*State* v. *Rivera*, supra, 205. Although § 54-47g (c) continues to recognize "the purposes behind the common-law presumption regarding the confidentiality and secrecy of grand jury proceedings, the statute favors disclosure after the grand jury has completed its investigation." Id., 206; see also *In re Final Grand Jury Report Concerning the Torrington Police Dept.*, supra, 710 (purposes of common-law presumption of grand jury secrecy were to encourage witnesses to come forward without risk of retribution or inducement, to eliminate risk that subjects of investigation would flee or try to influence grand jury and to ensure that persons who are accused but exonerated will not be held up to public ridicule). Thus, the effect of § 54-47g (b) was to place the burden on the person seeking confidentiality to establish that there is a substantial probability that one of the interests enumerated in § 54-47g (c) (1) through (4) will be prejudiced by disclosure.

With this background in mind, we address in turn each of the petitioner's claims in the present case. We begin with the petitioner's claim that the grand jury improperly determined that the disclosure of certain portions of the final report would prejudice the rights to a fair trial of one or more of the three persons who have been arrested as the result of the grand jury's findings of probable cause in the interim report, referred to hereafter as A, B and C. We disagree.

Section 54-47g (c) provides that, in order to grant the state's motion to seal, the grand jury must find "that there is a substantial probability that one of the following interests will be prejudiced by publicity that nondisclosure would prevent . . . (1) The right of a person to a fair trial . . . ." In support of its claim that the

of the investigation not disclosed with the finding pursuant to subsection [b] of this section shall be sealed, provided any person may file an application with the panel for disclosure of any such part of the record").

grand jury improperly determined that the disclosure of the final report would be prejudicial to the fair trial rights of one or more of the persons who have been arrested, the petitioner relies primarily on this court's decision in *State* v. *Pelletier*, 209 Conn. 564, 552 A.2d 805 (1989). In that case, the defendant claimed that the trial court improperly had denied his pretrial motion to transfer the prosecution because pervasive pretrial publicity had deprived him of his right to a fair trial. Id., 568. This court stated in *Pelletier* that "[t]he determination of whether a transfer of prosecution is necessary is a matter ordinarily entrusted to the sound discretion of the trial court. Nevertheless, due to the grave constitutional implications attending such pretrial rulings, appellate tribunals have the duty to make an independent evaluation of the circumstances." (Internal quotation marks omitted.) Id. We then observed that this court previously had held that, "[a]bsent inherently prejudicial publicity which has so saturated the community as to have a probable impact upon the prospective jurors, there must be some showing of a connection between the publicity . . . and the existence of actual jury prejudice in order to transfer a prosecution." (Internal quotation marks omitted.) Id., 569.

We recognized in *Pelletier* that the pretrial publicity had been extensive, but concluded that, because the publicity had been neither inflammatory nor inaccurate, and because it had not "created a trial atmosphere that had been utterly corrupted"; (internal quotation marks omitted) id., 570; the pretrial publicity was not so inherently prejudicial as to deprive the defendant of his right to a fair trial. Id. We further observed that the defendant could not show prejudice because all of the jurors had been thoroughly examined during voir dire and those who had substantial knowledge of the case had been excused. Id., 570–71. Accordingly, we concluded that the trial court "did not abuse its discretion in denying

the defendant's motion to transfer the prosecution."
Id., 571.

In the present case, the petitioner contends that, under *Pelletier,* the grand jury improperly granted the motion to seal the final report because there was "no evidence . . . on the likely quantity, pervasiveness, or persuasiveness of pretrial publicity" and "no evidence that pretrial publicity would be inaccurate." We conclude that the standards governing the transfer of cases to avoid the prejudicial effects of pretrial publicity are ill suited to guide the grand jury in determining whether it should release prejudicial information.[7] Courts necessarily are more constrained in their attempts to ameliorate the effects of past press coverage, which they cannot change, than the grand jury is in considering the future effects of the publication of the facts contained in its finding and report. It does not follow from the fact that courts must tolerate some degree of prejudice as the result of pretrial publicity, over which they have little control, that grand juries are required to disclose information that would *cause* such prejudice. Indeed, contrary to the petitioner's argument, the plain language of § 54-47g (c) (1) sets no minimum degree of prejudice to the persons' right to a fair trial that the grand jury must find in order to grant the state's motion to seal.

Accordingly, we conclude that *Pelletier* provides little guidance in the present case and we reject the petitioner's claim that, in order to seal its report on the ground that it will deny a person of his right to a fair trial, the grand jury was required to find that there was a substantial probability that the publicity would be inflammatory and inaccurate and would "utterly cor-

---

[7] Moreover, the fact that a trial court's discretionary decision denying a motion to transfer the prosecution will be *upheld* in the absence of a finding of inflammatory, inaccurate and corrupting pretrial publicity does not necessarily mean that a decision granting a motion to transfer will be *reversed* in the absence of such a finding.

rupt" the trial atmosphere. Rather, it is reasonable to conclude that the legislature intended that it would be within the grand jury's discretion to grant a motion to seal its report if it found that there was a substantial probability that the information in the report, even if reported accurately and dispassionately, would prejudice a person's right to a fair trial to a degree that is more than de minimis and that prejudice could be prevented by nondisclosure. In making this determination, the grand jury may consider the extent to which its report contains prejudicial information about the person and whether the information is probative of factual issues that are likely to be raised at trial.

In the present case, our review of the grand jury's final report satisfies us that the grand jury did not abuse its discretion in sealing the portions of the report that relate to one or more of the persons who have been arrested as the result of the findings of probable cause in the interim report.[8] The information in two portions of the report is prejudicial to A and the information in

---

[8] The petitioner claims that, because the grand jury's determination that portions of the final report should not be disclosed under § 54-47g (c) (1) involved a question of statutory interpretation, our review is plenary. As we have indicated, the determination regarding the extent to which pretrial publicity may have had a prejudicial effect on a person's fair trial rights ordinarily is subject to review for abuse of discretion. See *State* v. *Pelletier*, supra, 209 Conn. 568. This court in *Pelletier* also stated, however, that in light of the "grave constitutional implications" of rulings related to prejudicial pretrial publicity, "appellate tribunals have the duty to make an independent evaluation of the circumstances." (Internal quotation marks omitted.) Id. It is not entirely clear to us whether this language means that this court will review such rulings de novo or whether we simply afford a lesser degree of deference in such cases. We need not clarify the standard of review in the present case, however, because we conclude that the grand jury's determination that disclosure of the portions of the final report relating to A and B would prejudice their rights to a fair trial was proper under both standards. Similarly, because we conclude that the grand jury's determination that the disclosure of the interim report would prejudice the fair trial rights of A, B and C was a clear abuse of discretion, we need not consider whether that ruling would survive de novo review.

another portion of the report is prejudicial both to A and to B. Moreover, because the information in those portions of the final report is unrelated to the findings in the interim report, it is unlikely to be revealed during trial. Accordingly, we conclude that the grand jury reasonably found that there is a substantial probability that the disclosure of those portions of the final report would prejudice the right of those persons to a fair trial under § 54-47g (c) (1).

The petitioner claims, however, that even if the information in the final report was prejudicial to the rights to a fair trial of one or more of the persons who have been arrested, the grand jury abused its discretion in granting the state's motion to seal because there were reasonable alternatives to nondisclosure. See General Statutes § 54-47g (c) (grand jury must deny motion to seal unless it finds that "reasonable alternatives to nondisclosure cannot adequately protect" interest in fair trial). Specifically, the petitioner claims that the grand jury failed to consider that the fair trial rights of the persons who have been arrested could be protected through voir dire of potential jurors or a change in trial venue instead of nondisclosure. We disagree. The "reasonable alternatives" portion of § 54-47g (c) requires the grand jury to consider alternatives to nondisclosure when the alternatives would protect the enumerated interests in the first instance. It does not require the grand jury to injure an enumerated interest, such as the right to a fair trial, by disclosure, and then craft remedies to cure that injury.

The portions of the final report that relate to one or more of the persons who have been arrested as the result of the probable cause findings in the interim report also relate to persons who were not accused of any crime and for whom no probable cause was found. Because we have concluded that the grand jury properly sealed those portions of the report in order to protect

the fair trial rights of the arrested persons, we need not address the petitioner's claim that the grand jury improperly applied § 54-47g (b) to persons who were not accused of any crime.

One portion of the final report, however, relates solely to a person, referred to hereafter as D, who has not been arrested even though the grand jury found probable cause to believe that D had committed a crime. Because our analysis under § 54-47g (c) (1) applies only to the portion of the final report relating to persons who have been arrested pursuant to the findings of probable cause in the interim report, we must address the petitioner's claim that, in determining that the release of the final report would damage the reputations of innocent persons, the grand jury improperly interpreted the phrase "innocent persons," as used in § 54-47g (c) (4), to apply to D despite a finding of probable cause. We disagree.

The meaning of the phrase "innocent persons" as used in § 54-47g (c) (4) is a question of statutory interpretation and our review is, therefore, plenary. See *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 7. The phrase is not statutorily defined and the parties make no claim that its meaning is plain and unambiguous. Accordingly, we may "look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 8. As we have indicated, this court has held that § 54-47g (c) enumerates "the purposes behind the common-law presumption regarding the confidentiality and secrecy of grand jury proceedings . . . ." *State* v. *Rivera*, supra, 250 Conn. 206. Thus, the intent of the legislature in enacting § 54-47g (c) was not to disavow the importance of the

common-law justifications for secrecy, but merely to shift the burden of establishing that secrecy is justified to the person seeking nondisclosure. Accordingly, to determine the meaning of "innocent persons" under the statute, it is appropriate to look to the purposes of grand jury secrecy under the common law.

This court has recognized that, under the common law, grand jury secrecy was intended to "assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." (Internal quotation marks omitted.) *In re Final Grand Jury Report Concerning the Torrington Police Dept.*, supra, 197 Conn. 710, quoting *Douglas Oil Co.* v. *Petrol Stops Northwest*, 441 U.S. 211, 219, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979); see also *Douglas Oil Co.* v. *Petrol Stops Northwest*, supra, 219 n.10 (one purpose of grand jury secrecy is "to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt" [internal quotation marks omitted]); *In re American Historical Assn.*, 62 F. Sup. 2d 1100, 1103 (S.D.N.Y. 1999) ("the rule of secrecy seeks to protect . . . unindicted individuals from the anxiety, embarrassment and public castigation that may result from disclosure").[9]

Unlike the federal indicting grand jury, an investigatory grand jury's proceeding does not culminate in an indictment, but culminates either in a finding of proba-

---

[9] The federal rules governing grand jury proceedings, which were at issue in *Douglas Oil Co.* codified the common law. See *Illinois* v. *Abbott & Associates, Inc.*, 460 U.S. 557, 566 n.11, 103 S. Ct. 1356, 75 L. Ed. 2d 281 (1983); *Douglas Oil Co.* v. *Petrol Stops Northwest*, supra, 441 U.S. 218 n.9. As we have indicated, § 54-47g (c) enumerates "the purposes behind the common-law presumption regarding the confidentiality and secrecy of grand jury proceedings . . . ." *State* v. *Rivera*, supra, 250 Conn. 206. Accordingly, the federal cases are instructive in interpreting § 54-47g (c). See id. ("[w]e previously have been guided by federal law in construing our own investigatory grand jury statutes").

ble cause or in an exoneration of the investigated persons. See *In re Final Grand Jury Report Concerning the Torrington Police Dept.*, supra, 197 Conn. 707 (discussing distinction between indicting grand jury and investigating grand jury). As the grand jury in the present case recognized, however, if the grand jury makes a finding of probable cause as to a person, that does not necessarily mean that that person will be subsequently charged and tried. At oral argument before this court, the state pointed out that there are many reasons why a person for whom the grand jury has found probable cause may never be charged, including the state's determination that it cannot prove the charges beyond a reasonable doubt, the state's desire to call the person as a witness in the prosecution of another person, or the state's determination that, under the specific circumstances of the case, it would be unfair to charge the person. Numerous courts have recognized that the issuance of accusatory reports by nonindicting grand juries is disfavored because, when the grand jury does not indict, the accused person must stand mute and has no forum in which to vindicate his name. See *In re Grand Jury Proceedings*, 813 F. Sup. 1451, 1463 (D. Colo. 1992) ("A presentment [unaccompanied by an indictment] is a foul blow. It wins the importance of a judicial document; yet it lacks its principal attributes—the right to answer and to appeal. It accuses, but furnishes no forum for denial. No one knows upon what evidence the findings are based. An indictment may be challenged—even defeated. The presentment is immune." [Internal quotation marks omitted.]); *Republican Properties Corp.* v. *Grand Jury Presentment*, 971 So. 2d 289, 292 (Fla. App. 2008) (same); *People* v. *McCabe*, 148 Misc. 330, 333, 266 N.Y.S. 363 (1933) (same); see also *In re North*, 16 F.3d 1234, 1239 (D.C. Cir. 1994) ("various courts have struck down with strong language efforts by grand juries to accuse per-

sons of crime while affording them no forum in which to vindicate themselves" [internal quotation marks omitted]); *United States* v. *Briggs*, 514 F.2d 794, 802 (5th Cir. 1975) ("a man should not be subject to a quasi-official accusation of misconduct which he cannot answer in an authoritative forum" [internal quotation marks omitted]); *In re State Grand Jury*, 148 P.3d 440, 443 (Colo. App. 2006) ("[s]ecrecy serves to check the power of the grand jury by protecting citizens against unfound accusations of criminal misconduct that cannot be answered in an authoritative forum"). We conclude, therefore, that although a person for whom the grand jury has found probable cause has not been exonerated, the same concerns that apply to exonerated persons may be implicated and he may be deemed an innocent person under § 54-47g (c) (4) if the grand jury has cause to believe that it is reasonably possible that the person will never be charged with the crime.[10] In making this discretionary determination, the grand jury may consider the strength of the evidence against the person, the probability that the state will call the person

---

[10] This conclusion is consistent with the legislative history of § 54-47g (c). John Kelly, then the chief state's attorney, testified against the original version of the bill that was enacted as No. 88-345 of the 1988 Public Acts, a portion of which is now codified as § 54-47g (c) (4), at hearings on the bill before the judiciary committee. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1988 Sess., pp. 1380–96; see also Proposed Senate Bill No. 584, 1988 Sess. The original version of the bill provided that both the record and the finding of the investigatory grand jury would be presumptively open, and it provided no mechanism to prevent disclosures that would harm the reputations of innocent parties. Kelly stated that he was "adamantly opposed" to the bill; Conn. Joint Standing Committee Hearings, supra, p. 1380; partly because it would injure the reputations of persons who were targeted by the investigation but who were ultimately exonerated. Id., p. 1393 ("[I]f you have a certain target area—that is inquired into and that person is what I will term exonerated—should that person be publicly identified as someone who was targeted, but exonerated? You know what the public perception would be—'Well, he was guilty—they just couldn't get enough evidence against him.' You're harming an awful lot of innocent people by doing this."). The bill was subsequently amended to include the language set forth in § 54-47g (b) and (c) (4).

as a witness in the prosecution of another person, or any other factors that render it possible that the person will not be charged.

We disagree, however, with the grand jury's conclusion that "it may reasonably be argued that, prior to any conviction . . . all persons named in the report, of whom the . . . [g]rand [j]ury found probable cause existed that crimes had been committed, are certainly presumed to be 'innocent persons' [under § 54-47g (c) (4)]." The parties have provided, and our research has revealed, no authority for the proposition that a purpose of grand jury secrecy under the common law was to protect the reputations of persons who have been arrested for the conduct that was the subject of the grand jury's investigation. See *State* v. *Rivera*, supra, 250 Conn. 206 (§ 54-47g [c] enumerates "the purposes behind the common-law presumption regarding the confidentiality and secrecy of grand jury proceedings"). Rather, as we have indicated, the purpose of grand jury secrecy under the common law was to protect the reputations of persons who have not been charged and, therefore, have no forum in which to vindicate themselves. See, e.g., *In re North*, supra, 16 F.3d 1239. Moreover, if the phrase "innocent persons" included persons who have been arrested as the result of the grand jury's finding of probable cause, the sealing of the finding would be required pursuant to § 54-47g (b) if no finding of probable cause has been made, and would be warranted under § 54-47g (c) (4) *both* as to persons for whom a finding of probable cause had been found, but who have not been arrested, *and* to persons who have been arrested. This broad reading would be inconsistent with the presumption of openness. We conclude, therefore, that the grand jury in the present case improperly concluded that persons who have been arrested but not convicted are "innocent persons" under § 54-47g (c) (4).

Upon our review of the portion of the grand jury's final report relating to D, who has not been arrested, we conclude that the grand jury did not abuse its discretion in determining that D was an innocent person under § 54-47g (c) (4). The grand jury observed that all of its findings of probable cause were based solely on evidence presented by the state that might "not survive the scrutiny of cross-examination" and that some of the evidence "may be uncorroborated or inferred . . . ." Moreover, D was not a central figure in the grand jury's investigation, the focus of which was on "corruption and the misuse of public funds in the government of the [c]ity . . . in its activities and dealings with persons or firms doing business with the city." We conclude, therefore, that the grand jury reasonably could have concluded that it was reasonably possible that D would not be charged and, therefore, that he was an innocent person under § 54-47g (c) (4).

The petitioner claims, however, that the grand jury improperly granted the state's motion to seal part III of the final report in its entirety when it found that only "some" of the information in the final report "may" be uncorroborated. See General Statutes § 54-47g (c) (4) (reputations of innocent persons must be "significantly damaged by the release of uncorroborated information"). We disagree. The common-law presumption of grand jury secrecy was premised in part on the fact that the grand jury proceeding is not adversarial and on concerns that persons investigated by the grand jury have no opportunity to explain or to rebut the evidence presented to the grand jury. See *Fabiano* v. *Palos Hills*, 336 Ill. App. 3d 635, 654, 784 N.E.2d 258 ("[t]he absence of cross-examination and the nonadversarial nature of grand jury proceedings increase the risk that false testimony will go undetected"), cert. denied, 204 Ill. 2d 658, 798 N.E.2d 306 (2003); see also *United States* v. *Hasan*, 526 F.3d 653, 660 n.5 (10th Cir. 2008) ("[g]rand jury

proceedings are not adversarial proceedings where parties may present competing evidence and . . . the presiding judicial officer at the grand jury . . . is hardly well suited to issue neutral factual findings"); cf. General Statutes § 54-47f (d) (witnesses before grand jury may be examined only by grand jury or by attorney appointed by grand jury for such purpose, although witness has right to have counsel present). It is reasonable to conclude that, when the legislature used the phrase "uncorroborated information" in § 54-47g (c) (4), it intended to recognize these concerns. Accordingly, we conclude that the grand jury's observations in the present case that all of the evidence that it considered had been presented by the state and that none of it had been subject to cross-examination were equivalent to a finding that the evidence was uncorroborated for purposes of § 54-47g (c) (4).

Finally, we address the petitioner's claim that the grand jury improperly sealed the interim report, which the trial court incorporated by reference into the final report. The state contends that this court should not review this claim because the petitioner did not adequately raise it during the July 20, 2009 hearing before the grand jury. The state further claims that the claim is time barred because the petitioner did not raise it within seventy-two hours from the time that the interim order was issued, as required by § 54-47g (d). We conclude that the claim is not time barred, that it was preserved and that the grand jury improperly ordered that the interim report not be disclosed.[11]

We first consider whether the petitioner's claim regarding the interim report is time barred under § 54-47g (d). As we have indicated, § 54-47g (b) provides in

---

[11] Although we conclude that the interim report should be disclosed, we decline to identify the persons named therein in recognition of the rights of interested parties to seek reconsideration of our decision.

relevant part that "[t]he finding of the investigation shall be open to public inspection and copying at the court where it has been filed seven calendar days after it has been filed, unless within that period the Chief State's Attorney or a state's attorney with whom the finding was filed files a motion with the investigatory grand jury requesting that a part or all of such finding not be so disclosed. . . ." The statute does not provide for the issuance of interim reports or authorize the grand jury to issue any reports under seal. Subsections (c) and (d) of § 54-47g govern proceedings on the motion to seal, and the timing requirements for those procedures relate back to the state's filing of the motion to seal. Because the state filed no motion to seal the interim order in the present case,[12] and because the grand jury incorporated the interim report into its final report, which was the subject of the state's motion to seal, we conclude that the petitioner's petition for review, which was timely with respect to the final report, was also timely with respect to the interim report.

We also conclude that the petitioner's claim that the grand jury improperly sealed the interim report was preserved. The petitioner raised the claim at the hearing before the grand jury,[13] the record is adequate for review

---

[12] The interim report is contained in an envelope that was sealed with a paper label carrying the following notation: "ATTENTION! *REVIEW THE CONTENTS OF THIS FILE PRIOR TO DISCLOSURE.* THIS FILE IS SEALED OR CONTAINS SEALED INFORMATION." The label is signed by the grand jury's clerk and is dated January 13, 2009. The label also carries a handwritten note stating: "[January 29, 2009]. Copy of report to be given to [counsel] for review only. Report not to be copied by anyone. Copies to be made through state. Report to remain sealed." The record before this court contains no motion by the state to seal the interim report and the state has made no claim that it filed such a motion.

[13] At the July 20, 2009 hearing, the state observed that the interim report had been incorporated into the final report and stated that "one would argue then that the interim report, for which there was no motion to intervene filed, would then fall under this situation." Counsel for one of the interested parties then argued that the disclosure of the interim report would prejudice his client's right to a fair trial. At the conclusion of the hearing, counsel for the petitioner stated: "Now, I don't know what the reference is on pages 1,

and the interested parties had an opportunity to respond to the petitioner's claim both at the hearing and in their responses to the petition for review to this court.

The grand jury did not state its reasons for sealing the interim report. Because there is no suggestion in the present case that the interim report implicates the interests identified in § 54-47g (c) (2) or (3), however, it is reasonable to conclude that the grand jury sealed the interim report because it found that there was a substantial probability that its disclosure would prejudice the rights of the persons named therein to a fair trial under § 54-47g (c) (1), and that it would harm the reputations of innocent persons under § 54-47g (c) (4). With respect to the grand jury's conclusion that the disclosure of the interim report would harm the reputations of innocent persons, we have concluded that, as a matter of statutory interpretation, the phrase "innocent persons" as used in § 54-47g (c) (4) does not include persons who have been arrested as the result of the grand jury's finding of probable cause. Accordingly, we conclude that the grand jury improperly concluded that the interim report should be sealed to protect the reputations of A, B and C, all of whom have been arrested.

Moreover, even if we were to assume that the arrested persons are innocent persons under the statute, to the extent that the information in the interim report is already publicly known, nondisclosure of the report would not prevent harm to their reputations. See General Statutes § 54-47g (c) (grand jury may grant motion to seal only if nondisclosure would prevent harm to enumerated interests); see also *In re North*, supra, 16

2 and 3 of [the final report to] the prior report and I'm not even sure if the prior report was made public. So it's very difficult to argue to those but unless they meet one of the four tests, and I haven't heard an argument that they do except possibly the speculation about a fair trial and the speculation about potential massive pretrial publicity which would affect the rights of these parties which there is no factual evidence of right now."

F.2d 1240 (fact that grand jury filings contain information that is already publicly known weighs "most strongly" in favor of release). Virtually all of the information in the interim report relating to A, B and C is contained in the arrest warrant affidavits for those persons, which are publicly available. Much of the information also is contained in a press release by the office of the chief state's attorney dated January 27, 2009. Accordingly, we conclude that the grand jury improperly ordered that the interim report be sealed pursuant to § 54-47g (c) (4).

Similarly, because the information in the interim report is publicly known and may be reported freely by the media, nondisclosure of that information would not protect the right of any person to a fair trial. As a result, we further conclude that it was not within the grand jury's discretion to order the nondisclosure of the interim report under § 54-47g (c) (1).

The order of the grand jury granting the state's motion to seal with respect to part III of its final report is affirmed; the order of the grand jury sealing the interim report is reversed and the matter is remanded to the grand jury with direction to order the disclosure of the interim report.

In this opinion the other justices concurred.